510 P.2d 69

**STATE of Arizona, Appellee,**

v.

**Jerome Harold JOSEPH, Appellant.**

**No. I CA–CR 456.**

Court of Appeals of Arizona,
Division 1,
Department A.
May 22, 1973.

Gary K. Nelson, Atty. Gen., by Thomas A. Jacobs, Asst. Atty. Gen., Phoenix, for appellee.

Sheldon Stern, Phoenix, for appellant.

DONOFRIO, Presiding Judge.

This is an appeal by defendant Jerome Harold Joseph from a judgment of guilt on three counts of Grand Theft by False Pretenses, a felony, and one count of Petty Theft by False Pretenses, a misdemeanor, in violation of A.R.S. § 13–661, subsec. A, par. 3, and § 13–663, as amended. Defendant was granted probation on each of the charges. Pending appeal, probation was revoked and defendant given a prison sentence of not less than four nor more than six years on each count, to run concurrently. No appeal has been taken from the revocation of probation and subsequent sentence.

The separate counts against defendant stem from allegedly unauthorized withdrawals made by him on four separate occasions from his parents' savings account. There was another count of Grand Theft against defendant, but that count was subsequently dismissed. One of defendant's questions for review of this case concerns matters involving that count. We shall, therefore, defer discussion on that count until later in this opinion.

All the counts were tried together to the trial court, sitting without a jury. Defendant chose to represent himself at trial. There are no questions raised as to waiver of defendant's right to a jury trial or his right to assistance of counsel, and in searching the record for fundamental error, we find no Constitutional infirmities in defendant's waivers of those rights.

From the trial court's adjudication of guilt the defendant appeals, raising a number of issues, but said issues may be reduced to the following:

1. Whether the evidence presented at trial was sufficient to support the court's finding of guilt;

2. Whether the defendant was denied a fair trial and due process of law by an alleged late disclosure of an item of evidence which may arguably have been favorable to him.

In considering the sufficiency of the evidence to sustain a judgment of conviction, we must examine it in the light most favorable to the State. State v. Kruchten, 101 Ariz. 186, 417 P.2d 510

(1966), cert. denied, 385 U.S. 1043, 87 S. Ct. 784, 17 L.Ed.2d 687 (1967); State v. Taylor, 2 Ariz.App. 314, 408 P.2d 418 (1965).

A.R.S. § 13–661, subsec. A, par. 3, and § 13–663, as amended, under which defendant was tried and convicted read, in pertinent part, as follows:

"§ 13–661.

"A.  Theft is:

\*       \*       \*       \*       \*       \*

"3.  Knowingly and designingly, *by any false or fraudulent representation or pretense*, defrauding any other person of *money*, labor or property, whether real or personal." (emphasis added)

"§ 13–663.

"A.  'Grand theft' is:

"1.  Theft of money, labor or property of the value of more than one hundred dollars.

\*       \*       \*       \*       \*       \*

"B.  'Petty theft' is theft of any money, labor or property not included in grand theft.  As amended Laws 1963, Ch. 79, § 1; Laws 1968, Ch. 10, § 1."

■■  It is well-established law in Arizona that the crime of theft requires specific felonious intent to deprive the rightful owner permanently of his property. State v. Cravin, 96 Ariz. 346, 395 P.2d 706 (1964); State v. Marsin, 82 Ariz. 1, 307 P.2d 607 (1957); State v. Zaragosa, 6 Ariz.App. 80, 430 P.2d 426 (1967). The taking of property without the consent of the owner is alone insufficient. Whitson v. State, 65 Ariz. 395, 181 P.2d 822 (1947). However, it is also well settled that such intent in a prosecution for grand theft may be established by circumstantial evidence. State v. Jackson, 101 Ariz. 399, 420 P.2d 270 (1966). Given the above background, we must resolve the issue of the sufficiency of the evidence to support the requisite elements of the crimes charged, and the subsequent conviction thereon.

From our examination of the record on appeal it becomes apparent to us that the testimony of Mrs. Hannah Joseph, defendant's mother, was perhaps the key testimony of the trial. Because of her physical lameness Mrs. Joseph seldom personally visited the First Federal Savings & Loan where she and her husband, Mark Joseph, had maintained a joint savings account since 1960. Only Hannah and Mark Joseph had authority to withdraw any funds from the account, with Hannah handling nearly all of the transactions involving it. The approximate original balance in the account at the time the alleged offenses took place was $2,600.

It was during the late summer or fall of 1969 that Mrs. Joseph discovered her passbook missing. She testified that just prior to its disappearance she had noticed that the passbook was badly worn and in disrepair. Some time during November 1969 she discussed the disappearance with her son, and he allegedly told her he would make inquiries to get her a new passbook. After several weeks of delay and no passbook forthcoming, she again questioned her son as to the passbook whereabouts. He related different stories to her, among which were that a new passbook was still in the process of being made up; that the girl responsible for same was on a leave of absence; and that it was lost in the mail.

Upon defendant's representation that ". . . the bank has this kind of way of doing it, for a new bankbook", Mrs. Joseph personally signed a blank piece of paper four times. Some time between January and March, 1970, defendant presented a new passbook to Mrs. Joseph. She questioned the authenticity of the book at the time, but failed to act upon any of her suspicions. The notations stamped on the new passbook, it develops, deviated from customary First Federal procedures. See infra. It was not until late March or early April 1970, when Mrs. Joseph personally visited the First Federal office to make a withdrawal on the account to pay for moving expenses, that she discovered the savings account to be nearly totally depleted.

The separate counts against the defendant are based upon State's Exhibits 1

through 4. These exhibits are composed of separate pieces of paper, with typewritten words thereon, authorizing First Federal to issue drafts to various payees from Hannah and Mark Joseph's jointly held account. Hannah Joseph's signature appears on each of the slips of paper. In addition, a savings withdrawal slip and the actual drafts are attached to each sheet. The four withdrawals were made between October 9, 1969 and November 11, 1969. At trial Mrs. Joseph denied ever authorizing her son to make the withdrawals he allegedly made, and further, that though she recognized the name on the withdrawal slips to be hers, she testified that the signatures thereon were not her signatures.

A teller at First Federal, Miss Anita Kirtley, testified that she handled the four transactions in question, and that defendant was the party who presented the would-be withdrawal authorizations to her, and that he was alone on each occasion. Miss Kirtley further testified that she observed that the passbook which was presented by the defendant was worn and in need of repair, and that she in fact attempted to repair it. She also testified that at no time during the course of these transactions did defendant make a request for an authorization card for the issuance of a new passbook.

Testimony was given by other employees of First Federal as to the procedures involved in issuing a new passbook, and as to the notations which would be inscribed on it. It is quite clear from such testimony that the passbook presented by the defendant to his mother in no way conformed to First Federal's clearly established standards. Further, no rebuttal evidence was presented to show that someone at First Federal had prepared the new passbook. We feel that under the circumstances of the case the trial court, as trier of fact, could reasonably conclude that the passbook in question was not issued by anyone at First Federal, and was therefore a product of fabrication. Also, we feel that the trier of fact could reasonably conclude that

the passbook presented to Miss Kirtley was the one Mrs. Joseph believed to be lost.

After Mrs. Joseph discovered the shortage in the savings account she confronted her son with the facts, and after inquisition he admitted that he had made the withdrawals. Thereafter he offered to repay his parents.

Mr. Mark Joseph's testimony buttressed that of his wife. He also denied authorizing any of the withdrawals in Exhibits 1 through 4, and also testified that his son again admitted the acts alleged and offered repayment. Even after defendant's "offer" of repayment, no definite arrangements were made for repayment, nor did Mr. and Mrs. Joseph see or have any contact with him during the following year.

Defendant established that he had obtained numerous loans of various amounts from his parents in the past, and that he had partially repaid some of these loans. The parents' testimony clearly established, however, that these particular loans were made with their full knowledge and consent. Mrs. Joseph stated that the events of October to November 1969 were not part of any known loan.

Defendant attempted to demonstrate his "real intent" in the matter by showing that he had made other payments on behalf of his parents, including such items as car insurance (one premium), license plates and registration fees on their car. Mrs. Joseph testified, however, that these payments were made by defendant while he was in possession and use of the car.

Defendant further argues that his promise to repay the funds *subsequent* to the discovery of the withdrawals militates against the elements of intent to permanently deprive his parents of their savings requisite to upholding a finding of guilt under the pertinent statutes. Under the circumstances, defendant's position appears to us incredible at best.

Our examination of the record discloses that the necessary elements of the alleged offenses were sufficiently estab-

lished. The fact that the offers of repayment were made *after* the acts were committed, and only after the defendant was confronted with the accusations, does not exonerate him. If anything, it might tend toward mitigation of sentence upon conviction. *Cf.* A.R.S. § 13–686, dealing with mitigation of sentence upon return of embezzled property. The element of false representation was established through a showing of defendant's actions in getting his mother's signatures on the blank piece of paper under the guise of attempting to get a new passbook for her, when in fact he was seen using the old worn passbook to make the withdrawals. Intent was clearly shown by the following independent acts: that the previous loans had been made with the knowledge and consent of all concerned, and were handled differently; the fact that defendant never indicated any intention of repaying the funds he misappropriated until after the deficits were discovered; and that the "new" passbook presented to Mrs. Joseph by the defendant was in anything but the proper format. Couple this with the unrebutted statements of the defendant admitting the alleged acts, and this Court can only conclude that there was sufficient evidence in the record to support the trial court's determination.

Defendant's other question for review is that he was denied due process of law by his inability to fully cross-examine the State witnesses because he did not have use of an exhibit, specifically Exhibit 19, until too late in the proceedings. He contends that said exhibit was to be used to impeach Miss Kirtley's testimony that she had never seen the defendant and his mother in the loan company together.

Trial had begun on Friday afternoon, June 18, 1971. Miss Kirtley was the State's first witness. At the time she testified, there were five counts pending against defendant. It appears from the record that she testified only as to the exhibits which were the foundations for the counts upon which defendant was ultimately convicted. Defendant was afforded full and complete opportunity to cross-examine her and he exercised that right. Immediately after testifying, Miss Kirtley was excused by the trial court, apparently so she could return to Alaska. Both parties were given the opportunity to object to her dismissal, but neither did so.

On Monday morning, June 21, 1971, defendant moved to dismiss one of the counts of grand theft because no exhibits had been furnished to him. The State joined in the motion and the court granted the motion to dismiss the count. What eventually became Exhibit 19 was the basis of the count which was dismissed. Miss Kirtley had already been excused when Exhibit 19 became available, and presumedly before it acquired the significance the defendant now attaches to it.

Exhibit 19 consists of a copy of a savings withdrawal slip bearing the signatures of defendant and his mother, and a copy of a bank draft in the amount of $435.00 drawn to the order of defendant. The only difference between Exhibit 19 and Exhibits 1 through 4 is that the latter had the additional authorization slips with Hannah Joseph's signature.

A decade ago the United States Supreme Court stated in Brady v. Maryland, 373 U. S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963):

". . . [S]uppression by the prosecution of evidence favorable to the accused upon request violates due process *where the evidence is material either to guilt or to punishment*, irrespective of the good faith or bad faith of the prosecution." (emphasis added) 373 U.S. at 87, 83 S. Ct. at 1197.

Our Supreme Court has further ruled that the prosecution has the affirmative obligation to disclose evidence favorable to the defendant, whether he requests it or not. State v. Fowler, 101 Ariz. 561, 422 P.2d

125 (1967). *See* Canon 7, Code of Professional Responsibility; DR 7–103.

■ Even given the above, however, we fail to see how Exhibit 19, under the facts, could have relevance or materiality in exculpating the defendant. First of all, it relates to a charge which had been dropped. Further, there is nothing within it which indicates either that Mrs. Joseph was present with the defendant at the time the withdrawal slip was presented, or that Miss Kirtley even handled the transaction in question.

In addition to finding that there was substantial evidence to support the trial court's determination of guilt on each of the charges for which the defendant was convicted, we find that the alleged late disclosure of the matters contained in Exhibit 19 did not constitute prejudicial error.

Affirmed.

OGG and STEVENS, JJ., concur.