653 P.2d 19

**The STATE of Arizona, Appellee,**

v.

**Michael Christy JAHNS, Appellant.**

**No. 2 CA–CR 2418.**

Court of Appeals of Arizona,
Division 2.

June 7, 1982.

Rehearing Denied Sept. 8, 1982.

Review Denied Oct. 5, 1982.

Robert K. Corbin, Atty. Gen. by Bruce M. Ferg, Asst. Atty. Gen., Tucson, for appellee.

John Cody, Sierra Vista, for appellant.

## OPINION

HATHAWAY, Judge.

The defendant was tried to a jury and convicted of two counts of theft in violation of A.R.S. § 13–1802. The charges arose from the defendant's use of his parents' Master Charge card to obtain goods and services. He has raised seven issues on appeal, none of which requires reversal.

The record, viewed in support of the verdict, discloses that the defendant, while working for a trucking firm that was about to fail, went to his parents' home in Houston. They were away on vacation; he broke a window and entered the house. He stated that he had notified the police of his entry, but his father's attempt to confirm the police contact revealed no record of it. While in the house, the defendant took a Master Charge card issued in his mother's name, but with his father's signature. He used the card to fly to Colorado, for a motel and other travel expenses, and for various other charges.

When the defendant's parents returned home and discovered the taking of the card, they reported to the police that they believed the credit card had been stolen by the defendant. The theft was also reported to

Master Charge. The defendant was arrested in Sierra Vista when a suspicious clerk initiated a check on the validity of the card and discovered that it was listed as stolen. The defendant had credit card receipts in his possession and other credit card transactions were discovered.

First City National Bank, the institution which issued the Master Charge card, was listed alternatively as a victim, a question at trial being whether a loss had been sustained, and if so, by whom. The question was complicated in light of the defendant's father's willingness to pay the minimum charges on the account until the defendant could make the payments; this was raised by the defense to mean that there was no loss, hence no crime. The main defense was that the defendant believed he had authority to use the card.

Prosecution was initiated through an indictment under cause number 10414, which included eight counts of credit card violations. The grand jury had returned a "no bill" under the theft statutes, and eventually prosecution under the indictment was dismissed on motion of the prosecution, it apparently having been determined that prosecution under the theft statutes was preferable. Prosecution was reinstated by means of an information as cause number 10441. The information contained only two counts, charging felony theft. Eight misdemeanor counts were split off and tried in justice court as number 2479 J.P., resulting in convictions on all counts. A motion to dismiss based upon "vindictive prosecution" arose from the reformulated charges and was denied by the trial court. The defendant's father attempted to work out a plea agreement whereby the defendant would be placed on probation and would make restitution for the credit charges. Additionally, the defendant's father brought a civil action for the charges and the defendant agreed to a consent judgment being entered wherein he admitted liability. Motions in limine evolved from these proceedings as to what could and could not be admitted.

The defendant was tried in absentia and convicted on both counts. Because of a prior felony conviction, he received an enhanced presumptive sentence on each count, six years, to run concurrently. He raises the following issues on appeal:

I. Was the verdict supported by the evidence?

II. Was prosecution exhibit 28 improperly admitted because of references in it to uncharged misconduct?

III. Was the defense improperly denied its right to make effective closing argument?

IV. Should a mistrial have been declared because of improper closing argument by the prosecution?

V. Should the defendant's amended jury instruction number 12 have been given?

VI. Was it error to deny the pretrial motion to dismiss for vindictive prosecution?

VII. Was it error not to dismiss for other grounds supporting vindictive prosecution?

### I

The defendant was charged generally under A.R.S. § 13–1802 and the jury was instructed on the elements of A.R.S. § 13–1802(A)(3), which provides:

> "A. A person commits theft if, without lawful authority, such person knowingly:
>
> \* \* \* \* \* \*
>
> 3. Obtains property or services of another by means of any material misrepresentation with intent to deprive him of such property or services . . . ."

Appellant contends that for proof of theft there must be established a liquidated loss to each victim and that the loss must be actual and not threatened. With respect to the use of the credit card to purchase a citizen's band radio from Rand's Radio Shack, it is argued that Rand's suffered no loss and the bank had not charged off any loss to itself, but was merely planning to charge off the loss later in the month after trial. In addition, the defendant's father was willing to continue making minimum monthly credit card payments to the bank

for the radio charge until the defendant could begin making payments. It is contended that with reference to the Tundermountain Inn count, no loss was established since the bank had never been charged for the transaction and the defendant was arrested after he had checked in and before he had any opportunity to check out or otherwise settle his bill. A "liquidated" loss is not an element of theft by false pretenses. Our supreme court rejected such an argument in *State v. Mills,* 96 Ariz. 377, 396 P.2d 5 (1964), a case discussing the predecessor statute:

"Although there is authority for the proposition that an actual financial loss is necessary to constitute the crime of theft by false pretenses [citations omitted], we think the better rule is that there is no requirement that the victim suffer a pecuniary loss so long as he has parted with his property [citations omitted]. The defendants focus on the wrong part of the transaction. They direct attention to what the victim obtains. The gist of the offense, however, is concerned with what the defrauder obtains. Once the victim has parted with his property in reliance on a false representation, it is immaterial whether whatever he got in return is equal in exchange value to that with which he parted." 96 Ariz. at 381, 396 P.2d 5.

Regardless of whether the victims ultimately suffered a loss, or whether they were protected through the Master Charge program or through reimbursement from the defendant's father, they parted with property in reliance upon the defendant's false representation, i.e., that he lawfully possessed the credit card and was authorized to use it. *Cf., State v. Joseph,* 20 Ariz.App. 70, 510 P.2d 69 (1973).

■ The defendant argues that the statute is void for vagueness, contending that the word "obtain" is too vague. So long as the statute is couched in terms that men of average intelligence can understand and gives sufficient warning "so that men may conform their conduct to its dictates," it meets constitutional standards for clarity. *State v. Darby,* 123 Ariz. 368, 373, 599 P.2d 821, 826 (App.1979). Webster's Third International Dictionary, at 1559 (1971), defines the word "obtain" as follows:

"Obtain—to gain or attain possession or disposal of, usu. by some planned action or method."

We do not find the term so vague that men of average intelligence could not understand it in the context of the statute.

## II

■ The defendant complains about the introduction of a transcribed interview with the defendant on the basis that it contains references to other transactions involving his use of the credit card. This evidence would appear to have been properly admissible under the "common scheme or plan" exception to the rule precluding evidence of uncharged bad acts, Arizona Rules of Evidence, Rule 404(b). No objection was made to the exhibit. Indeed, the record discloses that defense counsel read the transcript as edited by the prosecutor and consented to its admission.

## III

■ The defendant contends that the trial court, in giving instructions to counsel prior to closing argument, erroneously limited defense counsel's right to argue vindictive prosecution to the jury. The instructions given by the court were directed to avoiding counsel's becoming involved in personalities during argument. The court emphasized that counsel should limit their arguments to the facts and reasonable deductions from the facts. We do not see in the court's instructions how counsel were unduly hampered. Defense counsel posed the following objection with reference to the trial court's instructions concerning closing arguments:

"MR. CODY: I am going to have to state a problem for the record. I am going to try to, to the best of my belief and intent, I am not going to attempt to get anything in in front of the jury relating to what the court has instructed me to leave out.

The problem in objection, although I think the court is considerably qualified, Mr. Lusk's position on the subject by permitting to make arguments based on principle, as long as they can be reference to specific testimony or specific introduced facts. I think the court has cut off the defense counsel at a point a little bit prior to what he should have been cut off at, and more specifically, that goes to, in arguing, that a case should not be brought or in arguing in generalized principles, arguing in generalized principles based upon facts or testimony that a case should not be brought, in drawing upon commonly known facts or general knowledge or otherwise, that specific reference can be made to the specific prosecutor in a case.

I really don't know how to express that objection any better. I don't think I expressed it very well, but I think the line that was drawn here has been drawn a little short of what would be necessary in order to ensure the constitutional right of every defendant to a fair trial to make arguments, and I refer more specifically to State versus Cooley, and Judge Riley's decision there to permit what I considered to be more personal arguments pertaining to a particular prosecutor or prosecutors or particular prosecutor's actions in going to the jury as an issue of fact or as a generalized argument, which they can consider in determining guilt or innocence."

We are unable to discern what ruling defense counsel was soliciting from the trial court and we find the objection insufficient to preserve any issue on appeal. Counsel's complaint that the court's instructions were too confusing to follow was not preserved by objection, nor was there a request for clarification. The matter not having been preserved will not be considered on appeal.

IV

■ Defendant contends that the trial court erred in denying his motion for mistrial based upon improper prosecutorial closing argument referring to civil pleadings which the defendant had introduced as evidence. Pursuant to the civil case, he had admitted his civil liabilities as a contractual matter to his father, the bank and Thundermountain Inn for charges against the credit card and had agreed to repay the charges pursuant to a specific repayment schedule. In referring to the civil action and repayment agreement during closing argument, the prosecutor challenged the arrangement and referred to it as a "smoke screen" and a "sweetheart plea agreement" calculated to keep the defendant out of jail. A general objection to the line of argument was made and overruled. After the jury retired to deliberate and without requesting curative instructions with reference to the argument complained of, counsel moved for a mistrial and the trial court denied the motion. Counsel has a responsibility to request corrective action at the earliest opportunity; waiting until corrective action cannot be taken may be too late. *See State v. Jamarillo,* 110 Ariz. 481, 520 P.2d 1105 (1974). A motion for mistrial obviously involves a serious remedy and its use is left to the sound discretion of the trial court, which will not be reversed unless its discretion is plainly abused. *State v. Christensen,* 129 Ariz. 32, 628 P.2d 580 (1981). We find no error in the trial court's refusal to grant a mistrial. We find that the argument with reference to the drafting of the pleadings was fairly supported by inference from the evidence. As to the enforceability of the agreement's being with the defendant's father and not with others, it would appear that its enforceability by anyone else was legitimately questionable. The defendant's father had testified that the terms of the arrangement had been worked out with defendant's counsel, who had submitted the proposition to him as an alternative way of making appellant pay the debts. It appears that the prosecution was not aware of the civil arrangement until the criminal trial was in progress. It does not appear that the First City National Bank or Thundermountain Inn were apprised of the civil proceedings.

It is contended that the prosecutor's remarks went too far and were disparaging to defense counsel, thus having the effect of

chilling counsel's zealous representation of the accused and that the remarks violated the trial court's instructions and that the prosecutor's accusations were unethical and perverted the American system of justice by implying immorality and illegality in defending a criminal client. It is contended that the argument shows the "in-bred perverse and subversive notions of this particular prosecutor as to what our system of criminal justice is and should be."

Our review of the arguments by the prosecution and the defense convinces us that counsel on both sides were vigorous and zealous in their advocacy. In denying the defense motion for mistrial, the trial court stated:

"The Court: Gentlemen, with regard to the order I made limiting the extent of instruction, I realized at the time I did it that we were going to have some problems. It's very difficult in a case such as this, where much evidence was brought in that, in my opinion, was immaterial, and I want to compliment both attorneys. I think you have followed the orders of the court on closing argument as closely as possible. I think there may have been a technical violation. I do not consider it serious, because I think it's reasonable comment as to the character of the agreement made, and I didn't consider that, when I made my order, and I think counsel for the state handled it appropriately. I was a little sensitized to the reference to 'you know who,' but in any event, it was kept at a minimum. I don't consider it a serious violation. I consider it within the realm of proper argument."

We defer to the trial court's coign of vantage in the courtroom in his assessment of counsel's arguments. We find nothing from the record with reference to argument which compels us to the conclusion that the trial court abused its discretion in denying the motion for mistrial.

## V

The trial court gave the defendant's requested instruction number 12, which provided:

"The state has alleged that the defendant used a credit card without authorization, to commit a theft at Rand's Radio Shack and attempted to use that card without authorization at the Thunder Mountain Inn.

Thus, to find the defendant guilty of either of the charged crimes, you must find that he did not have the reasonable belief that he had either of his parents' consent or authority to use their Master Charge card."

Defense counsel requested that the instruction be amended to delete the word "reasonable," but the trial court denied the request. It is argued that prejudicial error occurred in denying the requested amendment to the instruction. The argument is based on the contention that the defendant believed he had a right to use the credit card and that his belief did not have to be "reasonable" by objective standards but that the state was required to prove intent subjectively. Accepting arguendo the standard contended for by counsel, no evidence of claim of right was adduced and the evidence is to the contrary. Since the defendant was entitled to no claim of right instruction, he could not have been prejudiced by the one given.

## VI

The defense contends that the trial court erred in denying its pretrial motion to dismiss with prejudice for vindictive prosecution. A number of arguments are raised, the first being that the prosecutor pursued the defendant through a preliminary hearing after the Cochise County grand jury had returned a "no bill" on the same charges. It has been held that an indictment may be obtained after probable cause has been found lacking via a preliminary hearing. *State v. Woods,* 114 Ariz. 385, 561 P.2d 306 (1977); *Wilson v. Garrett,* 104 Ariz. 57, 448 P.2d 857 (1969). The same result should follow where probable cause is determined through a preliminary hearing after the grand jury has returned a "no bill."

■ It is contended that "family-type" offenses would not be prosecuted as double felonies by a reasonable prosecutor. We must conclude that the discretion to prosecute in the instant case properly lay with the state and not with the defendant's parents. That duty is linked with the state's responsibility to protect the public.

Complaint is made that the prosecutor sought to prosecute the defendant with three criminal cases, totaling about 18 counts, to make sure that the defendant would be convicted of something. The record indicates that there was a lag in the dismissal of some charges with the institution of new charges. No vindictive motive appears as the basis; rather, the prosecution appears to have gone through some revising and tailoring of its case in preparation for the final prosecution. That numerous counts evolved is attributable to the nature of the transactions and not to prosecutorial vindictiveness.

## VII

■ Complaint is also made that the state attempted to have defense counsel removed in the justice court proceedings. The record in those proceedings is not before us and we will not consider the matter further. Other complaint is made attributing a malicious attitude toward the defendant because of his nationality, lack of Arizona residency and his defense counsel. It is clear from the record that heated advocacy sparked controversy between counsel from time to time. We do not glean from the record, however, that vindictive measures and prosecution resulted. Some selectivity as to the best means of going forward with the prosecution is left to the discretion of the prosecuting authorities. *Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). Vindictiveness is a matter of concern, as appears in *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), where the court held that the record must reflect reasons for a heavier sentence imposed by the same judge upon retrial. In *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974),

the concern for vindictiveness was that the defendant should be permitted to pursue his appeal without the apprehension of facing a prosecutor's retaliation on retrial through substitution of a more serious charge. In *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), where the prosecutor admitted acting vindictively by obtaining a second more serious charge after the defendant refused to plead guilty to the original one, the court held the practice to be permissible as part of the plea bargaining process. In discussing the subject of vindictiveness in the pretrial setting, the New Mexico Supreme Court in *State v. Stevens,* 96 N.M. 627, 633 P.2d 1225 (1981), stated:

"We are sensitive both to a defendant's due process rights and to the need for full prosecutorial discretion in seeking indictments. We would not hesitate to impose a presumption of vindictiveness if we felt that such a presumption were necessary to protect defendants, in a pretrial setting, from deprivations of due process. We do not feel that such a presumption is necessary, however.

At the pretrial stage the prosecutor has not gone through the effort of a trial and therefore has less at stake and less motive to act vindictively. As pointed out by Judge Merritt, many actions taken by a prosecutor prior to conviction might appear vindictive yet are required by our system of criminal justice. We do not find at the pretrial stage the type of motivation sufficient to presume vindictiveness. Imposition of a pretrial presumption of vindictiveness would interfere with proper prosecutorial discretion. Prosecutors would be required to justify actions properly taken as adversaries but which may appear vindictive, adding additional burdens to the criminal justice system. Prosecutors might feel compelled to press the severest charges possible at the outset, to the detriment of defendants.

If a prosecutor acts vindictively before trial, the defendant still retains the protection of a jury trial. Situations may arise where egregious conduct on the part

of a prosecutor could extinguish the protections afforded by a jury trial. Even though a defendant does not have the benefit of a presumption at the pretrial stage, he may present evidence of vindictiveness and request relief from the court. However, such conduct is not present in this case." 633 P.2d at 1228–29.

We find the foregoing statements from the New Mexico Supreme Court apropos of the situation before us. There being no presumption of vindictiveness, the burden was upon the defendant to establish it. We conclude that he has not done so.

The state contends that claims of vindictiveness are handled in the federal system through interlocutory appeals and should be handled by means of special actions before proceeding to trial, otherwise the issue should be deemed waived. In support of this argument, *Blackledge v. Perry,* supra, is cited for the proposition that the due process right against vindictive prosecution "is the right not to be haled into court at all." We have difficulty with the state's argument, because in *Blackledge,* the defendant had pled guilty when faced with a trial de novo on the more serious charges and was sentenced as a felon as contrasted to the initial misdemeanor charge. The court had no difficulty in finding that prosecutorial vindictiveness required a reversal.

Affirmed.

HOWARD, C.J., and BIRDSALL, J., concur.