NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL AND
MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

TONY LEE HORTON, *Appellant.*

No. 1 CA-CR 15-0179
FILED 5-3-2016

Appeal from the Superior Court in Maricopa County
No.  CR2013-446217-001 SE
The Honorable Sam J. Myers, Judge
The Honorable Robert L. Gottsfield, Judge (Retired)

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

DeBrigida Law Offices, P.L.L.C., Glendale
By Ronald M. DeBrigida, Jr.
*Counsel for Appellant*

Tony Lee Horton, Tucson
*Appellant*

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Donn Kessler joined.

**W I N T H R O P**, Judge:

¶1        Tony Lee Horton ("Appellant") appeals his convictions and sentences for two counts of aggravated assault and one count of disorderly conduct.  Appellant's counsel has filed a brief in accordance with *Smith v. Robbins*, 528 U.S. 259 (2000); *Anders v. California*, 386 U.S. 738 (1967); and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), stating he has searched the record for error but failed to identify "any arguable issues of merit." Appellant's counsel therefore requests that we review the record for fundamental error.  *See State v. Clark*, 196 Ariz. 530, 537, ¶ 30, 2 P.3d 89, 96 (App. 1999) (stating that this court reviews the entire record for reversible error).  This court allowed Appellant to file a supplemental brief *in propria persona*, and Appellant has done so, raising several issues that we address.

¶2        We have appellate jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and 13-4033(A).[1]  Finding no reversible error, we affirm.

### FACTS AND PROCEDURAL HISTORY[2]

¶3        On November 7, 2013, a grand jury issued an indictment charging Appellant with aggravated assault, a class three dangerous felony. The State later filed an allegation of aggravating circumstances other than prior convictions, *see* A.R.S. § 13-701, and an allegation of a violent crime pursuant to A.R.S. § 13-901.03.

---

[1]     We cite the current version of all applicable statutes because no revisions material to this decision have occurred since the date of the offenses.

[2]     We view the facts in the light most favorable to sustaining the verdict and resolve all reasonable inferences against Appellant.  *See State v. Kiper*, 181 Ariz. 62, 64, 887 P.2d 592, 594 (App. 1994).

¶4        Appellant filed a motion to remand to the grand jury for a redetermination of probable cause, arguing he had requested that he be allowed to testify and present a video of the incident to the grand jury, but the State had failed to notify the grand jury of this information.  *See* A.R.S. § 21-412.  The State did not object, and the trial court granted the motion. On April 3, 2014, a grand jury issued a new indictment charging Appellant with Count I, aggravated assault by use of a deadly weapon or dangerous instrument, a class three dangerous felony; Count II, aggravated assault by intentionally, knowingly, or recklessly causing serious physical injury, a class three dangerous felony; and Count III, disorderly conduct, a class one misdemeanor.  *See* A.R.S. §§ 13-1203, -1204, -2904.

¶5        At trial, the State presented the following evidence:   On September 22, 2013, shortly after R.C.'s family returned home from church, the family went outside to conduct footraces between R.C.'s seventeen-year-old son and a friend.  The races were conducted on the street in front of Appellant's house.

¶6        At the same time, Appellant was inside preparing dinner with a small paring knife, when he heard a "commotion" outside.  Because Appellant's wife was ill, he went outside and asked R.C.'s family to hold the races somewhere other than the street in front of his house.  R.C. responded, "Man, you know, basically we're not doing anything.  The kids are out here just having fun.  We're running.  You know we're not doing anything."  Appellant announced he was going back inside his house, and R.C. replied, "You gotta do what you gotta do, man."  Appellant then returned to his home.[3]

¶7        Shortly thereafter, the two teenagers ran another race on the street in front of Appellant's house.  When Appellant realized R.C.'s family had not immediately left the area, Appellant exited his home with the paring knife still in his right hand and walked toward R.C., who at the same time moved toward Appellant.

¶8        A neighbor's surveillance video introduced as evidence at trial indicates that, as the two men confronted one another on the curb between Appellant's property and the street, R.C. punched Appellant, and Appellant immediately slashed at R.C. with the knife.  A brief altercation ensued, with R.C. continuing to throw punches and Appellant swinging the

---

[3]        Appellant testified he went back inside his house after R.C. responded, "Okay, Tone," which Appellant understood to mean R.C. had agreed to move the races elsewhere and "it was done."

knife at R.C. several times, cutting R.C.'s head, ear, hand, and chin. The final swing of the paring knife resulted in the knife blade breaking off in R.C.'s face before falling to the ground.

¶9        Appellant retreated toward his garage, and R.C. ran to his home and retrieved a handgun. Brandishing the gun, R.C. went outside to his driveway, where he could see Appellant in his garage across the street, and Appellant could see him. R.C. pointed the gun at Appellant, but eventually went back inside, and both R.C.'s wife and Appellant called 911 to report the incident. R.C. and Appellant were separately treated at local hospitals,[4] and Appellant was later arrested.

¶10        The jury found Appellant guilty as charged of two counts of aggravated assault and one count of disorderly conduct. The jury also found the offenses involved the infliction or threatened infliction of serious physical injury; the use, threatened use, or possession of a deadly weapon or dangerous instrument; and physical, emotional, or financial harm to the victim.

¶11        The court sentenced Appellant to concurrent, aggravated terms of fifteen years' imprisonment for Counts I and II, and a term of thirty-nine days in jail for Count III, with credit for thirty-nine days of presentence incarceration applied to each count. Appellant filed a timely notice of appeal.

## ANALYSIS

¶12        Appellant raises numerous arguments in his supplemental brief, many of which are intertwined with assertions that his trial and appellate counsel have provided him ineffective assistance. Because claims for ineffective assistance of counsel must be brought through Rule 32 proceedings, we do not address his arguments challenging the effectiveness of counsel on direct appeal. *See State v. Spreitz*, 202 Ariz. 1, 3, ¶ 9, 39 P.3d 525, 527 (2002).[5] However, we address his other arguments as follows:

---

[4]        Appellant's right index finger had been bent back over his thumb during the altercation, and he was treated for a possible broken hand.

[5]        For the same reasoning, we deny Appellant's "Application to Hold [Appellate Counsel] in Contempt," filed January 29, 2016.

*I.        Vindictive Prosecution in Grand Jury Proceedings*

**¶13**        Appellant argues fundamental error occurred because the prosecutor added charges of aggravated assault and disorderly conduct during the second grand jury proceedings, ostensibly in retaliation for the motion to remand the case to the grand jury filed by defense counsel. Generally, review of challenges relating to grand jury proceedings must be sought by special action before trial. *State v. Gortarez*, 141 Ariz. 254, 258, 686 P.2d 1224, 1228 (1984). Absent an indictment the State knows was partially based on perjured, material testimony, a defendant may not challenge matters relevant to the grand jury proceedings by appeal from conviction. *State v. Murray*, 184 Ariz. 9, 32, 906 P.2d 542, 565 (1995). Appellant makes no claim of perjured testimony, and is therefore arguably precluded from challenging the grand jury proceedings on direct appeal. *See id.*

**¶14**        Even assuming Appellant's argument is properly before us, however, selectivity as to the best means of going forward with a prosecution is generally best left to the discretion of the prosecutor. *State v. Jahns*, 133 Ariz. 562, 568, 653 P.2d 19, 25 (App. 1982). "At the pretrial stage the prosecutor has not gone through the effort of a trial and therefore has less at stake and less motive to act vindictively," and even "[i]f a prosecutor acts vindictively before trial, the defendant still retains the protection of a jury trial." *Id.* (citation omitted). Accordingly, we will not presume vindictiveness, and the burden is on Appellant to establish it. *Id.* at 569, 653 P.2d at 26. We conclude he has not done so.

**¶15**        The record supports the conclusion that the prosecutor acted within his discretion by adding Counts II and III to the sought-after indictment. The original indictment charged Appellant with Count I, aggravated assault for using a deadly weapon or dangerous instrument. The prosecutor did not oppose remanding for a redetermination of probable cause, and the new indictment added Count II, aggravated assault for causing serious physical injury to the victim, and Count III, disorderly conduct, for "engaging in fighting, violent or seriously disruptive behavior." The facts presented at trial supported these additional charges, as indicated by the jury's decision to convict Appellant of all charges. Moreover, "a certain amount of punitive intent . . . is inherent in any prosecution." *State v. Mieg*, 225 Ariz. 445, 448, ¶ 12, 239 P.3d 1258, 1261 (App. 2010) (citation omitted). On this record, Appellant has not shown either actual vindictiveness on the part of the prosecutor or circumstances presenting a realistic likelihood of vindictiveness. *See id.* at 447-48, ¶ 11, 239 P.3d at 1260-61.

## II. *Donald* Hearing

**¶16** On October 3, 2014, the trial court held a settlement conference pursuant to *State v. Donald*, 198 Ariz. 406, 411, ¶ 9, 10 P.3d 1193, 1198 (App. 2000), to explain the range of sentence that could be imposed if Appellant refused the State's plea offer.[6] Appellant rejected the plea offer and exercised his right to a jury trial. Appellant asserts both defense counsel and the judge who presided over the hearing were not fully familiar with his case and, accordingly, the *Donald* hearing was a "sham."[7]

**¶17** As we have recognized, Appellant's claim of ineffective assistance of counsel must be resolved in a Rule 32 proceeding. *See Spreitz*, 202 Ariz. at 3, ¶ 9, 39 P.3d at 527. As for Appellant's claim that the trial judge's lack of familiarity with Appellant's case resulted in a hearing that was not meaningful, the record does not support such a claim. At the hearing, the court advised Appellant of the range of potential sentence he faced if convicted at trial, including the maximum possible enhanced and aggravated sentence, and the range of sentence he faced if he accepted the State's offer to plead guilty to one class three non-dangerous felony. Furthermore, in his supplemental brief, Appellant acknowledges the court "told me what I may get." Appellant refused the State's offer, and it is clear from the record he was not interested in accepting that offer. On this record, the trial court did not deny Appellant the opportunity to make an informed decision in rejecting the plea agreement.

## III. *Jury Selection*

**¶18** Appellant argues reversible error occurred because six jurors were improperly excused during jury selection. The record indicates, however, that one of the jurors Appellant cites as being improperly excused (Juror 47) was retained and served on the jury. Of the others, three were dismissed for cause, and two were dismissed after peremptory strikes.

---

[6] *Donald* sets forth an attorney's duty to explain all significant plea proposals so a defendant may make a reasonably informed decision to accept or reject a plea offer. Defense counsel's duties include communicating the terms of the offer as well as the merits of the offer in relation to a defendant's chances at trial.

[7] Appellant refers to both the October 3, 2014 hearing and his March 13, 2015 sentencing hearing as *Donald* hearings. Only the October 3, 2014 hearing was a *Donald* hearing.

¶19 The first prospective juror excused for cause (Juror 44) was excused for failure to understand the proceedings in English, and the second (Juror 13) was excused for financial hardship. Difficulty understanding English is an appropriate ground for excusing a prospective juror, *see State v. Sanderson*, 182 Ariz. 534, 539, 898 P.2d 483, 488 (App. 1995); A.R.S. § 21-202(B)(3), as is "undue or extreme . . . financial hardship," A.R.S. § 21-202(B)(4); *accord State v. Payne*, 233 Ariz. 484, 497, ¶ 11, 314 P.3d 1239, 1252 (2013) (citing A.R.S. § 21-202(B)(4), (6)). The third juror excused for cause (Juror 38), a former law enforcement officer in the United States Air Force, was excused by the court after stating he would have "difficulty sitting as a fair juror" due to his tendency to lean toward law enforcement. In general, a biased juror who cannot reasonably render a fair or impartial verdict should be struck from the jury panel. *See Payne*, 233 Ariz. at 499, ¶ 24, 314 P.3d at 1254; *see also* Ariz. R. Crim. P. 18.4(b) ("When there is reasonable ground to believe that a juror cannot render a fair and impartial verdict, the court, on its own initiative, or on motion of any party, shall excuse the juror from service in the case.").

¶20 The two prospective jurors dismissed through peremptory strikes (Jurors 45 and 49) were both struck by defense counsel. To the extent Appellant asserts defense counsel's performance was deficient based on these strikes, Appellant may raise this argument in Rule 32 proceedings. *See Spreitz*, 202 Ariz. at 3, ¶ 9, 39 P.3d at 527. Moreover, although Appellant asserts the dismissal of several of these prospective jurors who were former or current law enforcement officers violated the prohibition against discrimination espoused in *Batson v. Kentucky*, 476 U.S. 79, 96 (1986), law enforcement officers are not a cognizable group that has historically been subjected to discrimination. Accordingly, on this record, *Batson* is not applicable.

IV. *Fair Trial and Alleged Perjury*

¶21 Appellant argues he was denied a fair trial because Arizona's Victims' Bill of Rights allowed R.C. to be in the courtroom during the trial and to refuse a pretrial interview. *See* Ariz. Const. art. 2, § 2.1(A)(3), (5). Appellant maintains that, as a result, R.C. was able to commit perjury by modifying his testimony to fit the State's theory of the crimes.

¶22 A victim in a criminal proceeding has the right to be present at all criminal proceedings. *See* Ariz. Const. art. 2, § 2.1(A)(3); *see also* Ariz. R. Crim. P. 9.3(a), 39(b)(4); *State v. Fulminante*, 193 Ariz. 485, 502, 975 P.2d 75, 92 (1999) (recognizing that a Victims' Bill of Rights excepting the victim from the rule that allows a defendant to exclude witnesses from trial while

other witnesses testify does not violate a defendant's due process rights absent a showing of actual prejudice). A victim also has the right to refuse pretrial interviews on behalf of the defendant. *See* Ariz. Const. art. 2, § 2.1(A)(5); *see also* Ariz. R. Crim. P. 39(b)(11); A.R.S. § 13-4433(A); *State v. Towery*, 186 Ariz. 168, 179, 920 P.2d 290, 301 (1996).

**¶23**    Appellant's claim that R.C. committed perjury and thereby prejudiced Appellant is not supported by the record. A person commits perjury in part by making (1) a false sworn statement in regard to a material issue, believing it to be false, or (2) a false unsworn declaration or statement in regard to a material issue that the person subscribes as true under penalty of perjury, believing it to be false. A.R.S. § 13-2702. However, "[c]ontradictions and changes in a witness's testimony alone do not constitute perjury." *Tapia v. Tansy*, 926 F.2d 1554, 1563 (10th Cir. 1991). In this case, defense counsel sought to impeach R.C.'s testimony by pointing out inconsistencies in his testimony with his prior statements and the video of the fight. These inconsistencies, although relevant to the jury's determination of R.C.'s credibility, do not constitute demonstrably false and material misstatements rising to the level of perjury.

### V. Appellant's Claim of Self-Defense

**¶24**    Appellant notes R.C. admitted he possessed a gun at some point during the incident, and argues that R.C.'s admission necessitated a jury finding that Appellant acted in self-defense. The trial court instructed the jury as to both "Justification for Self-Defense" and "Justification for Self-Defense—Deadly Physical Force," but in finding Appellant guilty as charged, the jury rejected Appellant's claims of self-defense. We find no reversible error.

**¶25**    As the trier of fact, it is the jury's province to weigh the evidence and determine witnesses' credibility. *State v. Fimbres*, 222 Ariz. 293, 297, ¶ 4, 213 P.3d 1020, 1024 (App. 2009). In general, we defer to the jury's findings of fact, credibility assessments, and resolution of conflicts in the evidence as long as the jury's findings are supported by the record and not clearly erroneous. *See State v. Grell*, 212 Ariz. 516, 528, ¶ 58, 135 P.3d 696, 708 (2006); *Fimbres*, 222 Ariz. at 300, ¶ 21, 213 P.3d at 1027.

**¶26**    Evidence in the record—including the video of the incident and the testimony of R.C. and others—supports the jury's verdicts. The State presented evidence from which the jury could have found beyond a reasonable doubt that Appellant was the aggressor and/or used more physical force than appeared necessary to a reasonable person in the

situation, and that R.C. did not retrieve his gun until after Appellant had concluded the crimes of which he was convicted. The jury's verdicts are supported by evidence in the record and are not clearly erroneous.

### VI. Alleged Improper Shift of the Burden of Proof

¶27 Appellant asserts the court's instructions improperly shifted the burden of proof to him and were generally conflicting and confusing. We disagree. The court properly instructed the jury that the State bore both the burden of proving Appellant guilty beyond a reasonable doubt and the burden of proving beyond a reasonable doubt that Appellant did not act with legal justification. The court further instructed the jury that if it found the State failed to carry its burden, the jury "must find [Appellant] not guilty of the charge." Contrary to Appellant's assertions, the court's instructions did not improperly shift the burden of proof to him. Moreover, Appellant has not shown error, much less reversible error, in any of the court's other instructions.

### VII. International Covenant on Civil and Political Rights

¶28 Appellant claims that, based primarily on the issues in his supplemental brief that we have addressed and rejected, his convictions violate the International Covenant on Civil and Political Rights ("ICCPR").[8] The ICCPR does not create judicially-enforceable individual rights, is not self-executing, and has not been given effect by congressional legislation. *United States v. Duarte-Acero*, 296 F.3d 1277, 1283 (11th Cir. 2002). Accordingly, the ICCPR is not binding on courts of the United States. *See Buell v. Mitchell*, 274 F.3d 337, 372 (6th Cir. 2001). Moreover, even assuming Appellant may invoke this covenant, he has raised no issues constituting reversible error.

---

[8] *See Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 257 n.35 (2d Cir. 2003) ("The United States Senate gave its advice and consent to ratification of the ICCPR on April 2, 1992, *see* International Covenant on Civil and Political Rights, 102d Cong., 138 Cong. Rec. S4781, S4784, and it was ratified by the President on June 8, 1992, see I United Nations, *Multilateral Treaties Deposited with the Secretary General* 165 (2003). However, the treaty was ratified with numerous reservations conforming the United States' obligations under the ICCPR to the requirements of the Constitution, and with the declaration that the ICCPR is not self-executing." (citations omitted)).

*VIII.  Meaningful Review*

**¶29**        Appellant argues his Fourteenth Amendment rights have been violated because he lacked the tools for meaningful review of the record.[9]  Even assuming *arguendo* that Appellant's argument is properly before us,[10] we find no error.

**¶30**        Appellant first maintains his attempts to obtain a transcript of an October 14, 2013 hearing on R.C.'s request for an order of protection have been futile.  However, Appellant attaches a transcript of that hearing to his supplemental brief, and he therefore cannot show error on this basis.

**¶31**        Appellant also states that much of the record he has received from the trial court is on a CD, and he asserts he has had only limited time to access a computer and review the CD while in the custody of the State. He therefore requests greater computer access in the prison library, access to document drafting software and a printer, and an order that the State allow him to purchase a personal computer.  Although the State is constitutionally required to supply an inmate with basic materials necessary to prepare legal papers, it is not obligated to supply him with ancillary supplies, such as computer software for drafting briefs or printing those briefs. *See Knight*, 161 Ariz. at 556-57, 779 P.2d at 1295-96.  Moreover, despite Appellant's complaints, he acknowledges he has received the record — albeit in the form of a CD — and he has had access to the record on the CD through use of the prison library computer, even if that access has not been unfettered.  He does not argue that portions of the record are

---

[9]        In part, the Fourteenth Amendment prohibits states from depriving a person of life, liberty, or property without due process of law.  U.S. Const. amend. XIV, § 1.

[10]        Generally, when an inmate claims a denial of access to the courts, a special action encompassing the common law writ of mandamus is appropriate. *Salstrom v. State*, 148 Ariz. 382, 384, 714 P.2d 875, 877 (App. 1986); *see also Bustamonte v. Ryan*, 175 Ariz. 327, 328, 856 P.2d 1205, 1206 (App. 1993) (holding that "[t]he proper method for an inmate to secure access to a law library is to seek special action relief in the nature of the common law writ of mandamus"); *Knight v. Superior Court (Ibarra)*, 161 Ariz. 551, 553–54, 779 P.2d 1290, 1292–93 (App. 1989) ("It is well established in Arizona that, when an inmate is denied access to the courts . . . the appropriate remedy is to seek special action relief, which encompasses the common law writ of mandamus.").

missing or inaccessible, indicate what further information he seeks to review, or indicate what, if any, paralegal or other legal assistance he may have received. Further, at no time before filing his supplemental brief did Appellant request additional time to review the record or file his brief. We also note Appellant's supplemental brief is quite extensive, with numerous citations to the record, as well as legal authority, indicating he has had substantial access to the record. Consequently, on this record, we cannot conclude Appellant's ability to present meritorious arguments to the court has been hindered.[11]

### IX. Other Issues

**¶32** We have reviewed the entire record for reversible error and find none. *See Leon*, 104 Ariz. at 300, 451 P.2d at 881; *Clark*, 196 Ariz. at 537, ¶ 30, 2 P.3d at 96. The evidence presented at trial was substantial and supports the verdicts. Appellant was represented by counsel at all stages of the proceedings and was given the opportunity to speak at sentencing. The proceedings were conducted in compliance with his constitutional and statutory rights and the Arizona Rules of Criminal Procedure.

**¶33** After filing of this decision, defense counsel's obligations pertaining to Appellant's representation in this appeal have ended. Counsel need do no more than inform Appellant of the status of the appeal and of his future options, unless counsel's review reveals an issue appropriate for petition for review to the Arizona Supreme Court. *See State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984). Appellant has thirty days from the date of this decision to proceed, if he desires, with a *pro per* motion for reconsideration or petition for review.

---

[11] Also, to the extent Appellant suggests his appellate counsel has not effectively assisted him in obtaining court documents and transcripts, he must raise that issue in a Rule 32 proceeding. *See Spreitz*, 202 Ariz. at 3, ¶ 9, 39 P.3d at 527.

**CONCLUSION**

¶34    Appellant's convictions and sentences are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: ama