NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

HAROLD OHANLON, *Appellant.*

No. 1 CA-CR 12-0633
FILED 07-22-2014

Appeal from the Superior Court in Maricopa County
No.  CR2010-005997-001
The Honorable Steven P. Lynch, Judge Pro Tempore

**AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Stephen Whelihan
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge John C. Gemmill delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Kent E. Cattani joined.

_____

**G E M M I L L**, Judge:

¶1         Defendant Harold Ohanlon appeals his conviction and sentence for sexual conduct with a minor.  For the reasons that follow, we affirm his conviction and sentence, except that we modify his sentence to vacate the requirement that he pay a fee for DNA testing.

## BACKGROUND

¶2         Ohanlon was charged with one count of sexual conduct with a minor ("Count 1") and one count of sexual abuse ("Count 2"), each allegedly committed against K.  Ohanlon was also charged with one count of molestation of a child ("Count 3"), allegedly committed against L, and one count of attempted molestation of a child ("Count 4"), allegedly committed against S.  Ohanlon moved to dismiss all charges pursuant to Arizona Revised Statutes ("A.R.S.") Section 13-107 because they were not filed within the seven year statute of limitations.  The State opposed the motion only with respect to Counts 1 and 3 because A.R.S. § 13-107 had been amended in 2001 to remove the limitation period for sexual conduct with a minor and molestation of a child. The trial court granted the motion to dismiss Counts 2 and 4 and denied the motion with respect to Counts 1 and 3.  At trial, the jury found Ohanlon guilty on Count 1, sexual conduct with a minor, and not guilty on Count 3.   The trial court sentenced Ohanlon to life in prison without the possibility of release for thirty-five years pursuant to A.R.S. § 13-604.01 (1999) and ordered him to pay the costs for DNA testing pursuant to A.R.S. § 13-610.  Ohanlon timely appeals and we have jurisdiction pursuant to Article 6, section 9 of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1), 13-4031 and 13-4033(A)(1).

¶3         The evidence presented at trial, which we view in the light most favorable to upholding the verdict, *see State v. Carrasco*, 201 Ariz. 220, 221, ¶ 1, 33 P.3d 791, 792 (App. 2001), reveals the following.  On August 19, 1999, police were called to Ohanlon's trailer to investigate allegations that he was sexually abusing K.  The officers found Ohanlon sitting on the porch with K on his lap.  One of the officers spoke with K, who denied that anything had happened.  The officers took K back to the station for further questioning.  Early the next morning, K was interviewed by Detective Maria Acousta.  During the interview K continued to deny that anything had happened.  After the interview, Acousta took the underwear

K was wearing to test for biological material. A microscopic examination of the underwear revealed the presence of sperm. Doctor Kathryn Coffman conducted a physical examination of K and although she found no injuries, she testified that this did not rule out penetration. Dr. Coffman also testified that she "assume[d]" that she took the "routine" set of swabs from K's genital area. She stated that she typically takes four swabs from the external genital area and one or two swabs from inside the vagina. In 2005 Officer Allison Sedowski examined the swabs taken from K's genital area. Sedowski received a total of four swabs in the envelope marked "vaginal swabs." She admitted that the swabs were not individually labeled when she received them and she did not know from where in the genital area each swab was taken. Sedowski cut a piece from one of the swabs for further DNA testing. Michele Marfori analyzed the cutting from the swab, extracted a sperm sample, and developed a male DNA profile. In 2008, Detective Donald Newcomer found Ohanlon in Maine and took a DNA sample from his mouth. Linda Silva took the sample and compared it to the DNA from sperm found on K's underwear and the swab. Silva concluded that Ohanlon's DNA matched that on the underwear and the swab.

¶4　　　　　K testified that she was staying with Ohanlon at his trailer in August 1999 and she was eight years old at the time. Before the police were called to the trailer on August 19, 1999, Ohanlon "was having sex" with her in the living room of the trailer. K stated that Ohanlon touched her vagina with his fingers and then "[h]e put his penis in my vagina." The prosecutor then asked the following line of questions:

> Q. When he put his penis in your vagina, do you know if he put it all the way in or part way in or something else?
>
> A. It would be part way.
>
> Q. And how do you know that it was part way in?
>
> A. Because I barely felt it. It was just maybe barely in my vagina.
>
> . . .
>
> Q. But you said he put his penis part way into your vagina?
>
> A. Yes.

Q. And, while you say part way, do you know -- well, when you say part way, where -- can you tell us specifically how it was part way?

A. I would suggest it was, like, barely enough inside for it to feel a little bit in there.

Q. But not all the way in?

A. Uh-huh.

Q. Is that a yes?

A. Yes.

Q. And it looked like you just held up your hands and kind of did a demonstration with your hands. Would you show us what you were just doing?

A. (Indicating.)

Q. So with your right hand you made sort [of] a circle, and with your left hand you had your pointer finger, and you put your pointer finger through that circle?

A. Yes.

K testified that she did not tell anyone about the abuse at the time because she was afraid that they would not believe her, and because she was "just a little kid" and she was afraid of what Ohanlon might do.

**ANALYSIS**

## I.     K's testimony was sufficient evidence of penetration

¶5        Ohanlon contends that the physical evidence and K's testimony were insufficient to establish the element of penetration, and that his conviction should thus be reversed. The question of sufficiency of the evidence is one we review de novo. *State v. West*, 226 Ariz. 559, 562, ¶ 15, 250 P.3d 1188, 1191 (2011). Our review is limited to whether substantial evidence supports the verdict. *State v. Sharma*, 216 Ariz. 292, 294, ¶ 7, 165 P.3d 693, 695 (App. 2007). "Substantial evidence is more than

a mere scintilla and is such proof that 'reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt.'" *State v. Mathers*, 165 Ariz. 64, 67, 796 P.2d 866, 869 (1990) (quoting *State v. Jones*, 25 Ariz. 417, 419, 610 P.2d 51, 53 (1980)). Reversible error based on the sufficiency of the evidence only occurs if there is a complete absence of probative facts to support the verdict. *Sharma*, 216 Ariz. at 294, ¶ 7, 165 P.3d at 695.

**¶6** "A person commits sexual conduct with a minor by intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person who is under eighteen years of age." A.R.S. § 13-1405(A). Sexual intercourse is defined in relevant part as "penetration into the penis, vulva or anus by any part of the body or by any object[.]" A.R.S. § 13-1401(3). Penetration occurs when the vulva is penetrated in the slightest degree. *See State v. Pollock*, 57 Ariz. 415, 418, 114 P.2d 249, 250 (1941); *State v. Knaubert*, 27 Ariz. App. 53, 61, 550 P.2d 1095, 1103 (App. 1976). The victim's direct and positive testimony of penetration is sufficient to establish the element. *See Pollock*, 57 Ariz. at 418, 114 P.2d at 250. The credibility of witnesses is an issue properly resolved by the jury. *State v. Soto-Fong*, 187 Ariz. 186, 200, 928 P.2d 610, 624 (1996).

**¶7** We conclude that K's testimony alone was sufficient to establish penetration. Moreover, contrary to Ohanlon's argument, K's testimony was not "equivocal" about whether penetration occurred. K positively testified that Ohanlon "put his penis in [her] vagina." Additionally, K provided a physical demonstration confirming her testimony. She made a circle with one hand and put the index finger on her other hand through it to illustrate penetration. Even though she testified that Ohanlon's penis was only part way in her vagina, evidence of the slightest degree of penetration is enough. Because the victim's direct and positive testimony is sufficient by itself to establish penetration, we conclude that the evidence sufficiently supports Ohanlon's conviction.

**¶8** The State also argues that the DNA evidence proves penetration. Ohanlon contends that the DNA evidence presented was insufficient by itself to establish penetration. He bases this argument on the fact that the testimony did not establish that the swab with his sperm was the sample taken from *inside* K's vagina. We agree with Ohanlon that the DNA evidence, standing alone, does not prove penetration. But the DNA evidence is generally corroborative of K's testimony because it confirms Ohanlon's presence and that some sexual activity had occurred

even if the sperm was not inside the victim's vagina. The DNA evidence is therefore supportive of the jury's verdict.

## II. The trial court erred in ordering Ohanlon to pay for DNA testing.

**¶9** The trial court ordered Ohanlon to pay the cost of DNA testing pursuant to A.R.S. § 13-610. Both Ohanlon and the State agree that it was error for the trial court to order Ohanlon to pay the cost of DNA testing. In *State v. Reyes* this Court held that A.R.S. § 13–610 does not authorize trial courts to order that defendants pay DNA testing costs. 232 Ariz. 468, 472, ¶ 11, 307 P.3d 35, 39 (App. 2013). Accordingly, we vacate the portion of the trial court's order directing that Ohanlon pay the DNA testing fee.

## CONCLUSION

**¶10** For these reasons, we affirm Ohanlon's conviction and sentence for Sexual Conduct with a Minor, but modify the sentence by vacating the trial judge's order that he pay a fee for DNA testing.

