IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellee*,

*v.*

ROCK KELLY INGRAM,
*Appellant*.

No. 2 CA-CR 2015-0148
Filed February 11, 2016

---

Appeal from the Superior Court in Pinal County
No. S1100CR201300228
The Honorable Bradley M. Soos, Judge

**AFFIRMED**

---

COUNSEL

Mark Brnovich, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Kathryn A. Damstra, Assistant Attorney General, Tucson
*Counsel for Appellee*

Rosemary Gordon Pánuco, Tucson
*Counsel for Appellant*

**OPINION**

Presiding Judge Vásquez authored the opinion of the Court, in which Chief Judge Eckerstrom and Judge Miller concurred.

V Á S Q U E Z, Presiding Judge:

¶1 Following a jury trial, Rock Ingram was convicted of misconduct involving weapons. On appeal, he argues the trial court erred in denying his request for a peremptory change of judge pursuant to Rule 10.2, Ariz. R. Crim. P. In addressing this issue, we first must determine whether the court's ruling may be challenged on direct appeal or must be reviewed in a special action. Ingram also contends the state presented insufficient evidence to support his conviction. For the following reasons, we affirm.

**Factual and Procedural Background**

¶2 We view the facts and all reasonable inferences therefrom in the light most favorable to upholding Ingram's conviction. *See State v. Almaguer*, 232 Ariz. 190, ¶ 2, 303 P.3d 84, 86 (App. 2013). In August 2012, officers received information that Ingram, who had an outstanding felony arrest warrant from Wisconsin, was at a house in Maricopa. Because the U.S. Marshals Service had warned that Ingram was possibly armed with a .40-caliber pistol and "would use it to elude capture," the officers called for backup. They then entered the house, detained Ingram, and found a .40-caliber bullet in his front left pocket.

¶3 N.H., who was renting the house, told the officers that Ingram was staying there, along with N.B. and her children. N.B. informed the officers that there was a gun in the house, and N.H. consented to a search. With N.B.'s assistance, the officers found a .40-caliber semi-automatic pistol in a briefcase, which was located in an empty television box in the master-bedroom closet. The pistol had seven rounds in the magazine and one loaded in the chamber. The briefcase also contained a box of .40-caliber ammunition, a gun-

cleaning kit, and an empty prescription pill bottle belonging to Ingram.

¶4        A grand jury indicted Ingram for one count of misconduct involving weapons by knowingly possessing a deadly weapon as a prohibited possessor.  The week before trial, the case was reassigned to the trial judge by an "immediately distributed" order dated January 29, 2015.  Ingram filed a notice of change of judge as a matter of right pursuant to Rule 10.2 on February 2, 2015, the day before trial.  The court denied the notice as untimely.

¶5        Ingram was convicted as charged, and the trial court sentenced him to a presumptive term of imprisonment of 2.5 years.[1]  We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## Change of Judge

¶6        Ingram contends the trial court erred by denying his request for a peremptory change of judge pursuant to Rule 10.2.  The state responds that "this court lacks jurisdiction to consider [Ingram's] argument" because he should have challenged the court's ruling by special action.[2]  We conclude that Ingram's challenge to the court's ruling is not reviewable on direct appeal.

¶7        Rule 10.2(a) provides:  "In any criminal case, each side is entitled as a matter of right to a change of judge."  To exercise this right, a party must file a notice of change of judge signed by counsel, avowing that the request is made in good faith.  Ariz. R. Crim. P. 10.2(b).  The rule provides time frames for filing the notice

---

[1]During trial, the parties stipulated that Ingram had been convicted of a felony in Wisconsin in August 1989.

[2]"[T]he word 'jurisdiction' means different things in different contexts."  *Taliaferro v. Taliaferro*, 186 Ariz. 221, 223, 921 P.2d 21, 23 (1996).  Here, the state appears to use the word to mean our "authority to do a particular thing," not our statutory or constitutional power to entertain a particular action.  *Id.*

depending on the stage of the proceedings.[3] Ariz. R. Crim. P. 10.2(c). The question presented here is whether a ruling on a Rule 10.2 notice of change of judge must be challenged by special action or can be reviewed on direct appeal from the final judgment of conviction.

¶8 Our supreme court's reasoning in *Taliaferro v. Taliaferro*, 186 Ariz. 221, 921 P.2d 21 (1996), guides our analysis here.[4] There, the court was faced with the same question in the context of a civil action: whether a party could challenge by appeal the trial court's denial of his notice of peremptory change of judge filed pursuant to Rule 42(f), Ariz. R. Civ. P., the civil analog to Rule 10.2. *Taliaferro*, 186 Ariz. at 222, 921 P.2d at 22. The court noted that errors occurring when the trial court fails to honor the notice—for example, when the court "rules that the notice is untimely, when it is indeed timely"—"are not well suited to an appeal after final judgment." *Id.* at 223, 921 P.2d at 23. It explained that "there is no way a party

---

[3]The rule, as relevant here, provides:

> [I]f a new judge is assigned to a case fewer than ten (10) days before trial (inclusive of the date of assignment), a notice of change of judge shall be filed, with appropriate actual notice to the other party or parties, by 5:00 p.m. on the next business day following actual receipt of notice of the assignment, or by the start of trial, whichever occurs sooner.

Ariz. R. Crim. P. 10.2(c).

[4]Although neither party directly cited *Taliaferro*, two of the cases relied upon by the state do. *See State ex rel. Thomas v. Gordon*, 213 Ariz. 499, ¶ 7, 144 P.3d 513, 515 (App. 2006); *Bergeron ex rel. Perez v. O'Neil*, 205 Ariz. 640, ¶ 11, 74 P.3d 952, 957 (App. 2003). And, in any event, our review is not limited to the authorities cited by the parties. *See State v. Zaman*, 190 Ariz. 208, 211, 946 P.2d 459, 462 (1997) (court considering own research); *State v. Emanuel*, 159 Ariz. 464, 467, 768 P.2d 196, 199 (App. 1989) (same).

could show prejudice from the error on appeal," unlike when a for-cause request for change of judge is denied. *Id.* The court reasoned that a peremptory change of judge essentially is a "'matter of grace'" that could be converted to "a trump card which would later destroy the validity of the entire proceeding." *Id.*, quoting *Hickox v. Superior Court*, 19 Ariz. App. 195, 198, 505 P.2d 1086, 1089 (1973). The court thus concluded that "a party must seek review by way of special action." *Id.*

¶9        The reasoning of *Taliaferro* applies equally to notices filed under Rule 10.2 in criminal cases. *See State ex rel. Thomas v. Gordon*, 213 Ariz. 499, ¶ 31, 144 P.3d 513, 518 (App. 2006) ("[O]ur supreme court has held the rules of law pertaining to change of judge are essentially the same in civil as in criminal cases."). Because Rule 10.2 permits a change of judge "merely upon request," without the need to show judicial bias or interest, it would be difficult on appeal for a party to show any resulting prejudice from that court's denial of the notice. *Anagnostos v. Truman*, 25 Ariz. App. 190, 192, 541 P.2d 1174, 1175 (1975). Once a defendant has been convicted and sentenced, "it is too late in the day to be worrying about who tried the case, short of true challenges for cause." *Taliaferro*, 186 Ariz. at 223, 921 P.2d at 23.

¶10        A system providing a peremptory change of judge must also afford prompt review—by way of special action—of a ruling on such a request. *See id.* Although special-action review is discretionary, "that is all a party is entitled to on a rule-driven 'matter of grace.'" *Id.* at 223-24, 921 P.2d at 23-24, *quoting Hickox*, 19 Ariz. App. at 198, 505 P.2d at 1089. "The administration of justice, already under great weight, needs no further burden."[5] *Id.* at 223, 921 P.2d at 23; *see also People v. Hull*, 820 P.2d 1036, 1040-41 (Cal.

---

[5] Notably, after *Taliaferro*, challenges to the denial of a Rule 10.2 notice of change of judge in criminal cases generally have been reviewed by special action. *See, e.g., Reed v. Burke*, 219 Ariz. 447, ¶ 2, 199 P.3d 702, 703 (App. 2008); *Bolding v. Hantman*, 214 Ariz. 96, ¶ 1, 148 P.3d 1169, 1170 (App. 2006); *Medders v. Conlogue*, 208 Ariz. 75, ¶ 1, 90 P.3d 1241, 1242 (App. 2004); *but see State v. Manuel*, 229 Ariz. 1, ¶¶ 1, 5, 270 P.3d 828, 830 (2011).

1991) (immediate review of judicial disqualification orders "'fosters judicial economy by eliminating the waste of time and money which inheres if the litigation is permitted to continue unabated'"), *quoting Guedalia v. Superior Court*, 260 Cal. Rptr. 99, 103 (Ct. App. 1989).

¶11 Relying on *State v. Keel*, 137 Ariz. 532, 672 P.2d 197 (App. 1983), Ingram nevertheless maintains we may address on appeal whether the trial court erred in denying his notice of change of judge. He asserts that a special action is an appropriate avenue for raising such a challenge but it is not "the exclusive . . . way."

¶12 In *Keel*, this court set aside the defendant's conviction for attempted theft because the trial court had "failed to honor" his notice of peremptory change of judge. 137 Ariz. at 532-33, 672 P.2d at 197-98. The state argued that "the error [was] not properly reviewable on appeal" and should have been brought by special action. *Id.* at 533, 672 P.2d at 198. We rejected this argument, reasoning that "relief could have been granted by special action," but it was not required. *Id.* Without explanation, we concluded the situation was "inapposite" to a challenge to grand-jury proceedings, which must be brought by special action. *Id.*; *see Bashir v. Pineda*, 226 Ariz. 351, ¶¶ 4-6, 248 P.3d 199, 201 (App. 2011). We also pointed to cases in which our supreme court had addressed Rule 10.2 arguments on appeal. *Keel*, 137 Ariz. at 533, 672 P.2d at 198.

¶13 But *Keel* was decided prior to our supreme court's decision in *Taliaferro*. *See State v. Dugan*, 149 Ariz. 357, 361, 718 P.2d 1010, 1014 (App. 1985) (previous decisions of this court considered persuasive unless clearly erroneous or conditions have changed). Moreover, in *Taliaferro*, while acknowledging that the analogy between a grand-jury proceeding and a peremptory change of judge "is not exact," the court found it sufficiently similar to extend the special-action requirement to the latter. 186 Ariz. at 223, 921 P.2d at 23. Thus, the Arizona Supreme Court in *Taliaferro* rejected this court's reasoning in *Keel*.

¶14 We acknowledge that *Taliaferro* did not explicitly overrule *Keel* and that a defendant like Ingram may have believed, based on *Keel*, that he could bring this issue by appeal. However, even if this were a special action, Ingram would not be entitled to

relief. When a new judge is assigned less than ten days before trial, Rule 10.2(c) requires a notice of change of judge to be filed "on the next business day following actual receipt of notice of the assignment." Ingram acknowledges that his attorney's office received the reassignment order on January 29, 2015, but maintains that he had until February 2, 2015, to file his notice of change of judge because his attorney was out of the office and did not actually see the reassignment order until January 30, 2015. In *Lee v. State*, 218 Ariz. 235, ¶ 10, 182 P.3d 1169, 1171 (2008), our supreme court stated "that an 'actual receipt' requirement . . . is compatible with the mail delivery rule," which is based on "the long-held understanding that mail properly sent will reach its destination." Thus, under that rule, "proof of the fact of mailing will, absent any contrary evidence, establish that delivery occurred." *Id.* ¶ 8. All Rule 10.2(c) requires is "actual receipt," which occurred here on January 29. *See Receipt*, *Black's Law Dictionary* 1459 (10th ed. 2014) ("The act of receiving something, esp. by taking physical possession."). The trial court therefore did not err in denying the notice as untimely. *See State v. Poland*, 144 Ariz. 388, 394, 698 P.2d 183, 189 (1985).

¶15　　　Ingram also asserts that "it was impossible for counsel to file a special action" because the denial of his Rule 10.2 request occurred the first day of trial. Although filing a petition for special action may have been difficult under the circumstances, it was not impossible. *See* Ariz. R. P. Spec. Actions 7(c) (allowing for stay of trial court proceedings if appellate court cannot address issue raised in special action "immediately"); *cf. State v. Mincey*, 130 Ariz. 389, 409, 636 P.2d 637, 657 (1981) (state filed special action in middle of trial; this court stayed trial while it resolved issue raised in special action).

¶16　　　In sum, we conclude that a challenge to the denial of a notice of peremptory change of judge filed pursuant to Rule 10.2 must be brought by special action. A defendant cannot challenge the trial court's denial of his request for a peremptory change of judge on direct appeal. *Cf. State v. Just*, 138 Ariz. 534, 542, 675 P.3d 1353, 1361 (App. 1983) (defendant cannot challenge grand-jury proceedings on appeal).

**Sufficiency of the Evidence**

**¶17**      Ingram also argues the trial court erred in denying his motion for a judgment of acquittal pursuant to Rule 20, Ariz. R. Crim. P., because the state presented insufficient evidence to support his conviction. "The sufficiency of the evidence is a question of law we review de novo." *State v. Snider*, 233 Ariz. 243, ¶ 4, 311 P.3d 656, 658 (App. 2013). "'[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. West*, 226 Ariz. 559, ¶ 16, 250 P.3d 1188, 1191 (2011), *quoting State v. Mathers*, 165 Ariz. 64, 66, 796 P.2d 866, 868 (1990). We will reverse only if no substantial evidence supports the conviction. *State v. Sharma*, 216 Ariz. 292, ¶ 7, 165 P.3d 693, 695 (App. 2007). "Substantial evidence is such proof that 'reasonable persons could accept as adequate and sufficient to support a conclusion of [a] defendant's guilt beyond a reasonable doubt.'" *Id., quoting Mathers*, 165 Ariz. at 67, 796 P.2d at 869.

**¶18**      A person commits misconduct involving weapons by knowingly "[p]ossessing a deadly weapon . . . if such person is a prohibited possessor." A.R.S. § 13-3102(A)(4). A prohibited possessor is any person "[w]ho has been convicted within or without this state of a felony . . . and whose civil right to possess or carry a gun or firearm has not been restored." A.R.S. § 13-3101(A)(7)(b).

**¶19**      The parties stipulated that Ingram had been convicted of a felony in Wisconsin in August 1989. An officer also testified that Ingram told him during his post-arrest interrogation that "he's not allowed to touch a gun or have a gun." The state thus presented sufficient evidence that Ingram was a prohibited possessor, *see Sharma*, 216 Ariz. 292, ¶ 7, 165 P.3d at 695, and Ingram does not argue to the contrary on appeal.

**¶20**      However, Ingram contends the state "did not present sufficient evidence to prove that [he] 'possessed' the gun." "'Possess' means knowingly to have physical possession or otherwise to exercise dominion or control over property." A.R.S. § 13-105(34). "Possession may be actual or constructive." *State v.*

*Gonsalves*, 231 Ariz. 521, ¶ 9, 297 P.3d 927, 929 (App. 2013). Because the pistol was not found on Ingram's person, our inquiry turns to whether the evidence was sufficient to establish constructive possession.

**¶21**        "Constructive possession exists when the prohibited property 'is found in a place under [the defendant's] dominion [or] control and under circumstances from which it can be reasonably inferred that the defendant had actual knowledge of the existence of the [property].'" *State v. Cox*, 214 Ariz. 518, ¶ 10, 155 P.3d 357, 359 (App. 2007), *quoting State v. Villavicencio*, 108 Ariz. 518, 520, 502 P.2d 1337, 1339 (1972) (alterations in *Cox*). "The terms 'dominion' and 'control' carry their ordinary meaning, such that dominion means 'absolute ownership' and control means to 'have power over.'" *Id.* ¶ 9, *quoting State v. Tyler*, 149 Ariz. 312, 316, 718 P.2d 214, 218 (App. 1986).

**¶22**        The state may use direct or circumstantial evidence to prove constructive possession. *State v. Donovan*, 116 Ariz. 209, 213, 568 P.2d 1107, 1111 (App. 1977). "[U]nder a theory of constructive possession, two or more persons may jointly possess a prohibited object; possession need not be '[e]xclusive, immediate and personal.'" *Gonsalves*, 231 Ariz. 521, ¶ 9, 297 P.3d at 929, *quoting State v. Carroll*, 111 Ariz. 216, 218, 526 P.2d 1238, 1240 (1974) (second alteration in *Gonsalves*); *see also Villavicencio*, 108 Ariz. at 520, 502 P.2d at 1339. "However, a person's mere presence at a location where a prohibited item is located is insufficient to show that he or she knowingly exercised dominion or control over it." *Gonsalves*, 231 Ariz. 521, ¶ 10, 297 P.3d at 929.

**¶23**        Here, the officers had been informed by the U.S. Marshals Service that Ingram was possibly armed with a .40-caliber pistol.[6] Ingram was staying at the house where he was arrested, and

---

[6]Although this appears to be hearsay, Ingram did not object on that basis at trial. *See State v. McGann*, 132 Ariz. 296, 299, 645 P.2d 811, 814 (1982) ("[I]f hearsay evidence is admitted without objection, it becomes competent evidence admissible for all purposes."). Instead, he argued the testimony lacked proper foundation. *See State v. Lopez*, 217 Ariz. 433, ¶ 4, 175 P.3d 682, 683 (App. 2008) ("[A]n

the officers found a loaded .40-caliber semi-automatic pistol in a briefcase in the master-bedroom closet. When asked if the briefcase looked familiar, Ingram responded, "I have one like it, but I don't know if that one is mine." The officers never told Ingram where they had found the briefcase, but he stated that his was "in the closet."

¶24 In the briefcase, along with the pistol, officers found a box of .40-caliber ammunition and a prescription pill bottle with Ingram's name on the label. The label was dated less than two months prior to the date of Ingram's arrest. In addition, Ingram had a .40-caliber bullet in his front left pocket. Although Ingram contends the bullet "is not relevant" because "it was not placed into evidence," he did not object when the officers testified they had found it on his person when they searched him after his arrest. Contrary to Ingram's assertion, the bullet is circumstantial evidence linking the .40-caliber pistol to him.[7]

¶25 Moreover, the outside of the briefcase had a "tag," which included a reference to Racine, Wisconsin. Ingram's prior felony was from Wisconsin, and he was born there. Nothing in the briefcase indicated someone else owned it. As for the pistol, Ingram admitted "touch[ing] a gun like that." Viewed collectively, there was sufficient evidence to establish that Ingram had constructive possession of the pistol. *See Sharma*, 216 Ariz. 292, ¶ 7, 165 P.3d at 695. Accordingly, the trial court did not err in denying Ingram's motion for a judgment of acquittal. *See Snider*, 233 Ariz. 243, ¶ 4, 311 P.3d at 658.

### Disposition

¶26 For the foregoing reasons, we affirm Ingram's conviction and sentence.

---

objection on one ground does not preserve the issue on another ground.").

[7]One of the officers testified that the bullet could have been placed in the box of ammunition recovered from the briefcase when the evidence was impounded.