NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JAY B. LEWIS, *Appellant.*

No. 1 CA-CR 18-0162
FILED 5-21-2019

Appeal from the Superior Court in Maricopa County
No. CR2016-002018-001
The Honorable Peter A. Thompson, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michelle L. Hogan
*Counsel for Appellee*

Dow Law Office, Phoenix
By David W. Dow, Jennifer Ghidotti
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge James P. Beene delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Kent E. Cattani joined.

_____

**B E E N E**, Judge:

**¶1**        Jay B. Lewis appeals his convictions and sentences for two counts of burglary in the third degree.  He challenges the sufficiency of evidence supporting one of the convictions, and he argues the superior court erred in denying his motions to sever the charges and to suppress statements he made during a police interview.  Lewis further contends a search warrant permitting the police to attach a tracking device to his vehicle was not supported by probable cause.  Finally, Lewis argues the court erred in admitting photographic evidence.  For the following reasons, we affirm.

## FACTS[1] AND PROCEDURAL HISTORY

**¶2**        As H.S. arrived to open his restaurant before dawn, he noticed a man walking on the roof of an adjacent vacant commercial building, "pushing something" off the roof.  H.S. and his cousin, R.R., then observed the man climb to the ground and move scrap metal in the bed of a pickup truck.  H.S. wrote down the truck's license plate number as the man drove the truck to the other side of the business.  The man stopped, exited the truck, and studied a gray metal box that was on the ground.  H.S.'s brother gave the license plate number to police who then discovered that Lewis was the truck's registered owner.  H.R. and R.R. could not identify Lewis in a photographic lineup, and they erroneously described him as having blonde hair.

**¶3**        Later that day, police obtained a search warrant to place a Global Positioning System ("GPS") tracking device on Lewis's truck. After attaching the device, police commenced surveillance of the truck and

_____

[1]        We view the facts in the light most favorable to upholding the verdicts and resolve all reasonable inferences against the defendant. *State v. Harm*, 236 Ariz. 402, 404, ¶ 2, n.2 (App. 2015) (citing *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)).

located it at a storage unit where Lewis was unloading an air conditioning housing unit, insulation, and wiring from his truck bed. The owner of the vacant building next to the restaurant subsequently determined the building's $5,000 air conditioning unit was missing from the roof.

¶4 Two days later, police observed Lewis on the roof of another vacant commercial building in the early morning, removing items from an air conditioning unit and depositing them near a corner of the roof. Lewis eventually descended from the roof and drove away in his truck. A short time later, police observed Lewis return to the building and park his truck adjacent to two ropes hanging from the building's roof. Using the ropes, Lewis pulled two bundles from the roof into the bed of his truck. Police subsequently followed Lewis to the same storage facility that he visited two days before and arrested him. Detective Dillinger interviewed Lewis, and Lewis admitted to being at the second building and taking metal items from the roof.

¶5 The grand jury indicted Lewis on two counts of burglary in the third degree, Class 4 felonies. Before trial, the superior court found the search warrant authorizing the GPS device was invalid, and the court suppressed evidence police obtained at the locations signaled by the device. The State appealed, and this Court reversed the superior court's suppression order and remanded. *State v. Lewis*, 1 CA-CR 13-0803, 2015 WL 157485, at *1, ¶ 1 (Ariz. App. Jan. 13, 2015) (mem. decision).

¶6 After a mistrial, the second jury found Lewis guilty on both counts. The superior court subsequently found Lewis had five prior felony convictions and imposed concurrent ten-year prison terms. Lewis timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

### I. Sufficient Evidence Supported Lewis's Conviction on Count 1.

¶7 Lewis argues the superior court should not have denied his motion for judgment of acquittal, *see* Ariz. R. Crim. P. 20, because insufficient evidence supported his conviction on Count 1, the first burglary. Lewis's argument primarily focuses on the eyewitness's inability to correctly describe and identify the person they saw on the neighboring business's roof. Lewis also contends insufficient evidence supported a determination that the building's air conditioning unit went missing on the day in question.

3

¶8            A judgment of acquittal is appropriate only if there is "no substantial evidence to support a conviction."  Ariz. R. Crim. P. 20(a)(1); *State v. Fulminante*, 193 Ariz. 485, 493, ¶ 24 (1999).  Likewise, our review of the sufficiency of the evidence underlying a conviction is limited to determining "whether substantial evidence supports the verdict."  *State v. Sharma*, 216 Ariz. 292, 294, ¶ 7 (App. 2007).  Therefore, we address these two arguments together.  We will not reverse the superior court's denial of a motion for a judgment of acquittal or a jury's guilty verdict unless there is "a complete absence of probative facts" supporting a defendant's conviction.  *State v. Johnson*, 215 Ariz. 28, 29, ¶ 2 (App. 2007).

¶9            We reject Lewis's arguments.  At the site of the first burglary, eyewitnesses observed Lewis's truck containing scrap metal, and they watched a person "pushing something" off the neighboring business's roof. Hours later, police found Lewis with his truck at a storage unit unloading scrap metal and parts of an air conditioning unit.  The jury could reasonably infer the items police observed at the storage facility were associated with the witness's observations earlier in the day.

¶10            Two days later, police observed Lewis at a different vacant commercial building with the same truck used during the first burglary. Similar to the previous burglary, Lewis climbed on the roof before sunrise, stripped an air conditioning unit, and, using his truck, transported the scrap metal to the same storage unit he visited after the first burglary; the circumstances of the second burglary were relevant to establish substantial evidence of Lewis's identity as the perpetrator of the first burglary, particularly given evidence that the same truck was used in both burglaries. *See* Ariz. R. Crim. P. 13.3(a)(2) (two or more offenses may be joined if they

"are based on the same conduct or are otherwise connected together in their commission.").[2]

**¶11**      Lewis also asserts H.S.'s testimony conflicted with statements he made to a police officer on the day of the burglary, and his testimony that the "same person" was on the roof and next to the truck is "without merit." However, we do not resolve conflicts in testimony or weigh the evidence; these issues are, rather, matters properly considered by the jury. *State v. Soto-Fong*, 187 Ariz. 186, 200 (1996); *see also State v. Toney*, 113 Ariz. 404, 408 (1976) ("Evidence is not insubstantial simply because testimony is conflicting or reasonable persons may draw different conclusions from the evidence."). We conclude that ample evidence supported the guilty verdict on count 1 and, therefore, the superior court did not err in denying Lewis's Rule 20 motion for acquittal.

## II.    The Superior Court Properly Denied Lewis's Motion to Suppress His Statements.

**¶12**      During the custodial interview, Lewis described his presence on the roof of the second building and the "mess up there," before stating: "I can't talk to the cops, man." Lewis contends he invoked his right to remain silent and that the superior court erred in denying his motion to suppress the statements he made after the invocation.

**¶13**      In evaluating the denial of a motion to suppress, we review only the evidence submitted at the suppression hearing, and we view those facts in the manner most favorable to upholding the superior court's ruling. *State v. Blackmore*, 186 Ariz. 630, 631-32 (1996). A ruling on a motion to suppress will not be reversed on appeal absent "clear and manifest error," the equivalent of an abuse of discretion. *State v. Newell*, 212 Ariz. 389, 396,

---

[2]     Because the evidence regarding the second burglary was admissible to prove Lewis's identity in connection with the first offense, *see State v. Phillips*, 202 Ariz. 427, 433, ¶¶ 16-18 (2002), *superseded by statute on other grounds as noted in State v. Carlson*, 237 Ariz. 381, 395, ¶ 46 (2015), he cannot sustain his burden of establishing his trial was unfair or he suffered prejudice resulting from the superior court's failure to sever the offenses for trial, *see State v. Escalante*, 245 Ariz. 135, ___, ¶ 21 (2018) (detailing a defendant's burden in establishing reversible error under fundamental error standard of review). Accordingly, we summarily reject Lewis's contention that the superior court fundamentally erred in not severing the counts.

¶ 22, n.6 (2006). We review the superior court's legal decisions *de novo.* *Blackmore*, 186 Ariz. at 632.

**¶14** "An invocation of the right to silence must be unequivocal and unambiguous, as judged from the perspective of a reasonable officer under the totality of the circumstances." *State v. Payne*, 233 Ariz. 484, 501, ¶ 40 (2013) (citation omitted). "If an invocation is ambiguous or equivocal, 'the police are not required to end the interrogation . . . or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights.'" *Id.* (quoting *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010)).

**¶15** The statement at issue was part of the following conversation between Lewis and Detective Dillinger:

> [Lewis]: Can . . . you people tell [me] something about what's going on?
>
> [Detective]: Yeah, right now you are under arrest for burglary.
>
> [Lewis]: Burglary and what class felony is that?
>
> [Detective]: It's a commercial building, so it's a class 4.
>
> [Lewis]: A four? There wasn't anything there. Like, I mean, like . . . it was like just a couple of pieces of metal. And, it wasn't . . . it was someone tore the whole place up . . . oh, man.
>
> [Detective]: Where did . . . you get the metal from, from the building?
>
> [Lewis]: It's all over the roof. It's like just a mess up there. Like, I just went and looked . . . and I didn't do anything to get it . . . . It was just tore up dude . . . . I just, I just, goddamn it man, I'm so fucking, damn, I wish I could just fuckin'. *I can't talk to the cops, man.* I can't, I can't eat. It was like ten dollars' worth of shit. I just fucking . . . . I just barely got things together, dude. I just patched it up with my girlfriend. (Emphasis added.)

**¶16** Preliminarily, even before referencing talking to law enforcement, Lewis had already acknowledged being on the roof of the building and taking pieces of metal. And we agree with the superior court's determination that the statement "I can't talk to the cops" was not a clear invocation of Lewis's right to remain silent. Significantly, after making the

statement, Lewis continued to voluntarily speak, thereby indicating he chose not to exercise his right to remain silent. *See State v. Hicks*, 133 Ariz. 64, 74 (1982) ("*Miranda* does not require the police to force an accused to remain silent or to turn a deaf ear toward an accused who insists upon talking.").

## III. The Superior Court Properly Denied Lewis's Motion to Suppress the Search Warrant.

**¶17** Lewis contends insufficient probable cause supported the search warrant application, and the superior court should have, therefore, suppressed the search warrant.

**¶18** "The Fourth Amendment to the U.S. Constitution requires a search warrant be issued only upon probable cause." *Frimmel v. Sanders*, 236 Ariz. 232, 239, ¶ 26 (App. 2014) (citing U.S. Const. amend. IV). "Probable cause exists when the facts known to a police officer 'would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present.'" *State v. Sisco*, 239 Ariz. 532, 535, ¶ 8 (2016) (quoting *Florida v. Harris*, 568 U.S. 237, 243 (2013)); *see also United States v. Jones*, 565 U.S. 404-05 (2012) (establishing that GPS surveillance of a vehicle is a search and thus subject to the general requirement of a warrant supported by probable cause).

**¶19** Here, a witness observed a man walking on the roof of an adjacent vacant commercial building during early morning hours, "pushing something" off the roof, moving scrap metal into the bed of a pickup truck, and driving away in the truck. The witness gave the truck's license plate number to the police, who found it was registered to Lewis. It was reasonable to infer that Lewis's truck was involved in criminal activity, therefore, sufficient probable cause existed to issue a search warrant to place a GPS tracking device on Lewis's truck. *See Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) ("[T]he ultimate touchstone of the Fourth Amendment is reasonableness . . . .") (quotation omitted); *see also Lewis*, 1 CA-CR 13-0803, at *1, ¶ 1.

## IV. The Admission of Additional Photographs Was within the Superior Court's Discretion.

**¶20** Exhibit 16 is a group of photographs depicting the scrap metal items after they were removed from Lewis's truck. The photographs show the items close-up and organized at a police facility. Lewis contends the superior court should have precluded the exhibit because it was cumulative

to exhibit 15, which is a packet of photographs depicting the same items when they were found in the truck after the second burglary.

¶21        Exhibit 16 is not cumulative to exhibit 15.  Compared to exhibit 15, the photographs in exhibit 16 are taken from different angles and depict the scrap metal pieces in more detail.  The superior court did not abuse its discretion in admitting exhibit 16. *See State v. Bocharski*, 200 Ariz. 50, 56, ¶ 27 (2001) ("Trial courts have broad discretion in admitting photographs.") (citation omitted).

## CONCLUSION

¶22        Lewis's convictions and sentences are affirmed.

