NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

KEVIN GABINO PRADO, *Appellant.*

No. 1 CA-CR 19-0369
FILED 5-28-2020

Appeal from the Superior Court in Mohave County
No. S8015CR201800958
The Honorable Billy K. Sipe, Jr., Judge *Pro Tempore*

**AFFIRMED IN PART; VACATED IN PART**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz, Kristin Hooker, Rule 38(d) certified student
*Counsel for Appellee*

Office of the Legal Advocate, Kingman
By Jill L. Evans
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge David B. Gass joined.

---

**W I N T H R O P**, Judge:

**¶1**　　　Kevin Gabino Prado, a passenger in a vehicle carrying illegal drugs, appeals his convictions and sentences for transportation of narcotic drugs for sale, possession of narcotic drugs for sale, possession of drug paraphernalia, and possession of marijuana. Prado argues (1) insufficient evidence supports his conviction for transportation of narcotic drugs for sale and (2) his conviction for possession of narcotic drugs for sale must be vacated because it is a lesser-included offense of transportation of narcotic drugs for sale. For the following reasons, we affirm Prado's convictions and sentences, except his conviction and sentence for possession of narcotic drugs for sale, which we vacate.

**FACTS AND PROCEDURAL HISTORY**[1]

**¶2**　　　At approximately 10:40 p.m. on June 8, 2018, a Mohave County Sheriff's deputy conducted a traffic stop on a Honda Civic traveling approximately ninety miles per hour in a seventy-five mile-per-hour zone. Two men were in the Civic, which lacked a rear license plate.

**¶3**　　　As the deputy approached the front-seat passenger's side of the Civic, he smelled the odor of marijuana emanating from inside the vehicle. He asked the driver for his driver's license, proof of insurance, and vehicle registration. While waiting for those documents, the deputy observed rolling papers commonly used to smoke illegal drugs between the passenger's feet, a tan plastic tube often found inside rolling papers on the vehicle's back seat, and a black purse draped over the driver's shoulder.

---

[1]　　　We review the evidence and the inferences therefrom in the light most favorable to sustaining the verdicts. *State v. Girdler*, 138 Ariz. 482, 488 (1983). We do not weigh the evidence, *State v. Salman*, 182 Ariz. 359, 361 (App. 1994), or assess witnesses' credibility, *State v. Williams*, 209 Ariz. 228, 231, ¶ 6 (App. 2004), because those are jury functions.

¶4　　　　The driver exhibited heavy breathing and an elevated heart rate, and he tried to rush the traffic stop, asking several times to leave. Eventually, the driver produced a California identification card and a Nevada Highway Patrol citation issued at approximately 2:00 p.m. that day, but he had no other requested documentation, including vehicle registration or proof of insurance. The passenger stared straight ahead without making eye contact, and when asked to produce identification, provided a California identification card identifying him as Kevin G. Prado. When asked if he possessed anything illegal, the passenger replied that he did not.

¶5　　　　The deputy ran a records check, discovered the driver had a suspended license, and asked the driver to step out of the vehicle. The deputy asked the driver about his travels, including where the two men were coming from and where they were headed, and whether there was marijuana in the vehicle. The driver told the deputy there was no marijuana in the vehicle and consented to a search of the vehicle.

¶6　　　　The deputy also had Prado step out of the vehicle and asked him about the men's travel plans. Prado stated the men were going to the Salt Lake City area to visit Prado's family for one week. However, Prado did not specifically know where in that area his family lived. Because no luggage was visible in the vehicle, the deputy asked Prado if the trunk contained any luggage. Prado said there was no luggage in the trunk, and when asked what the men planned to do for clothing during the week, Prado explained they planned to borrow clothes from his family.

¶7　　　　The deputy told Prado that he smelled marijuana coming from the vehicle and believed he had probable cause to search it. The deputy asked Prado if he had a medical marijuana card, and Prado stated that he did not. When the deputy again asked if Prado had anything illegal in the vehicle, Prado admitted he had a marijuana vape pen in the vehicle and marijuana in his pocket. The deputy found the marijuana in a container in Prado's right front pocket.

¶8　　　　When asked if the men had stopped anywhere between the time they were pulled over in Nevada and the time the deputy pulled them over, Prado answered no. The deputy said it was impossible for them to have driven straight through because at least seven or eight hours had passed, and the longest it should have taken them to drive that distance straight through was one-and-a-half to two hours. Prado changed his statement, saying he and the driver had stopped at a casino for dinner.

¶9        The deputy searched inside the vehicle, and in the passenger side door, he found a marijuana vape pen with a waxy substance and the distinct odor of marijuana.  On the passenger floorboard, the deputy found the rolling papers and the black purse, which had been moved to the passenger's side.  The purse contained $10,000 in currency, tied together with rubber bands.  When asked about the large amount of currency found in the purse, Prado claimed both men had won money at the casino, but they did not have any receipts from cashing out.  Prado claimed the driver had won approximately $8,000 to $15,000, and he had won approximately $300.[2]

¶10       Next, the deputy searched the trunk, where he found a multi-colored fluorescent backpack containing multiple large bundles that appeared to be heroin wrapped in plastic vacuum-sealed food bags.[3]  Seven bundles weighing a total of approximately nine pounds were in the vehicle.[4]  The deputy conducted a field test on one of the bundles, and subsequent laboratory testing confirmed there were 704.9 grams (or approximately 1.554 pounds) of heroin in one of the bundles.  The deputy also found three iPhones inside the vehicle during his search.[5]

¶11       After the deputy discovered the heroin in the trunk, he arrested Prado and read him his *Miranda*[6] rights.  Prado agreed to answer questions, and the deputy asked how long the men had been in California.[7]

---

[2]       The total amount of currency recovered was $10,547.  The driver possessed $24, and Prado had $523 on his person.

[3]       At trial, the deputy testified drugs are often packaged in this manner, to hide the smell when trafficked.

[4]       At trial, the deputy testified the retail price for a pound of heroin is between $40,000 and $80,000, depending on where the drugs are being sold.  Thus, the total value of the heroin found in the vehicle was between $360,000 and $720,000.

[5]       At trial, the deputy testified the presence of multiple phones often indicates the phones are being used as tracking and communication devices while drugs are transferred from seller to buyer.

[6]       *Miranda v. Arizona*, 384 U.S. 436 (1966).

[7]       The deputy recorded the conversation, and the audio recording was later played for the jury.

Prado hesitated before answering. The deputy also asked Prado whose backpack with the heroin inside was in the trunk, and Prado said he did not know to whom it belonged.

**¶12** A grand jury later charged Prado with Count I, transportation of narcotic drugs for sale, a class two felony; Count II, possession of narcotic drugs for sale, a class two felony; Count III, possession of drug paraphernalia, a class six felony; and Count IV, possession of marijuana, a class six felony. *See* Ariz. Rev. Stat. ("A.R.S.") §§ 13-3405(A)(1), -3408(A)(2), (7), -3415(A).

**¶13** At trial, the court denied Prado's motion for a judgment of acquittal pursuant to Arizona Rule of Criminal Procedure ("Rule") 20, and the jury convicted Prado as charged. The trial court sentenced Prado to concurrent, presumptive sentences of five years' imprisonment for Counts I and II and concurrent, mitigated four-month sentences for Counts III and IV, while crediting Prado for 371 days of presentence incarceration.

**¶14** We have jurisdiction over Prado's timely appeal. *See* Ariz. Const. art. 6, § 9; A.R.S. §§ 12-120.21(A)(1), 13-4031, -4033(A).

**ANALYSIS**

*I.* *The Conviction for Transportation of Narcotic Drugs for Sale*

**¶15** Prado argues insufficient evidence supports finding he knowingly possessed or controlled the heroin being transported.

**¶16** We review *de novo* a trial court's ruling on a Rule 20 motion for judgment of acquittal. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011) (citation omitted). A trial court should enter a judgment of acquittal "if no substantial evidence supports the conviction." *State v. Davolt*, 207 Ariz. 191, 212, ¶ 87 (2004). Substantial evidence is proof that reasonable persons could accept as adequate and sufficient to find guilt beyond a reasonable doubt. *West*, 226 Ariz. at 562, ¶ 16 (citations omitted).

**¶17** In reviewing the sufficiency of the evidence supporting a conviction, we determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Cox*, 217 Ariz. 353, 357, ¶ 22 (2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We do not distinguish between the probative value of direct and circumstantial evidence. *State v. Bible*, 175 Ariz. 549, 560 n.1 (1993),

*abrogation on other grounds recognized by McKinney v. Ryan*, 813 F.3d 798, 815 (9th Cir. 2015).

¶18   Under A.R.S. § 13-3408(A)(7), "[a] person shall not knowingly . . . [t]ransport for sale, import into this state, offer to transport for sale or import into this state, sell, transfer or offer to sell or transfer a narcotic drug." The State bears the burden of proving every element of the crime. *State v. Dickens*, 187 Ariz. 1, 18 (1996), *abrogated on other grounds by State v. Ferrero*, 229 Ariz. 239, 242-44, ¶¶ 14-21 (2012).

¶19   To satisfy the statutory elements, the State must prove "either actual physical possession or constructive possession with actual knowledge of the presence of the narcotic substance." *Maricopa Cty. Juv. Action No. J-72773S*, 22 Ariz. App. 346, 348 (1974) (citation omitted); *see also* A.R.S. § 13-105(34) ("'Possess' means knowingly to have physical possession or otherwise to exercise dominion or control over property."). "Constructive possession exists when the prohibited property is found in a place under the defendant's dominion or control and under circumstances from which it can be reasonably inferred that the defendant had actual knowledge of the existence of the property." *State v. Ingram*, 239 Ariz. 228, 233, ¶ 21 (App. 2016) (internal quotation marks and citations omitted).

¶20   "Under a theory of constructive possession, two or more persons may jointly possess a prohibited object; possession need not be exclusive, immediate and personal." *Id.* at ¶ 22 (internal quotation marks and citations omitted). This is so because the "right to control" the item or its location is sufficient to establish constructive possession, and exclusive possession or control is not required. *State v. Curtis*, 114 Ariz. 527, 528 (App. 1977).

¶21   Nevertheless, mere presence at, or proximity to, a location or container where narcotics are found is insufficient by itself to establish a defendant knowingly possessed or exercised dominion and control over narcotic drugs. *See id.*; *State v. Miramon*, 27 Ariz. App. 451, 452 (1976).

¶22   Here, substantial evidence presented at trial supports the jury's guilty verdict on Count I. The jury could have reasonably inferred Prado's knowledge of the heroin in the trunk through his statements to the deputy, inconsistencies in and changes to those statements, and inconsistencies between the stories of Prado and the driver. When asked if there was any luggage in the trunk consistent with traveling for a week, Prado advised the deputy there was not and that the two men planned to borrow clothes from his family. From these statements, Prado made clear

he had access to the trunk and knew it contained no luggage or clothing. Moreover, on this record, nothing indicates Prado had any less control over the heroin in the trunk than his friend, the driver, did at any given time. The drugs were within equal proximity to both men while they were in the passenger compartment of the vehicle, and given Prado's statements, both men evidently had access to the trunk when the vehicle was stopped. Accordingly, jurors could reasonably infer Prado had joint possession of the heroin.

¶23 Prado's evasiveness and mannerisms as witnessed by the deputy during the encounter further support that he knew there were illegal narcotics in the vehicle. Prado also changed his story about whether the men had stopped when the deputy pointed out the implausibility of his timeline, indicating the likelihood of intentional deception on Prado's part. In sum, the evidence presented at trial was sufficient for the jury to find beyond a reasonable doubt that Prado exercised dominion and control over the heroin, and, therefore, possessed it.

¶24 Prado contends he was not an "accomplice" to the actions of the driver because he did not ask, command, or provide the means or opportunity for the driver to commit the offense. However, a jury could find that, by sharing joint possession of the heroin, Prado was guilty without regard to whether he was also an accomplice to the driver's acts. *See* A.R.S. § 13-302. Moreover, given Prado's inconsistent and somewhat implausible statements, a jury could infer Prado lied about where the men were going, about whether (and where) the men had stopped after they were pulled over in Nevada, and about the origin of the large amount of currency to provide the driver with an alibi and aid the driver in committing the offense of transporting illegal narcotics for sale.

¶25 Given the totality of the circumstances, the jury could reasonably infer Prado had actual knowledge and joint possession of the heroin. Therefore, substantial evidence supports the verdict on Count I.

## II. *The Conviction for Possession of Narcotic Drugs for Sale*

¶26 Prado also argues his conviction and sentence on Count II, possession of narcotic drugs for sale, must be vacated because that offense is a lesser-included offense of Count I, transportation of narcotic drugs for sale. The State agrees, and so do we.

¶27 We review *de novo* whether an offense is a lesser-included offense. *State v. Cheramie*, 218 Ariz. 447, 448, ¶ 8 (2008). "To constitute a lesser-included offense, the offense must be composed solely of some but

7

not all of the elements of the greater crime so that it is impossible to have committed the crime charged without having committed the lesser one." *State v. Celaya*, 135 Ariz. 248, 251 (1983) (citation omitted).

¶28 Prado was charged with one count of transportation of narcotic drugs for sale (Count I) and one count of possession of narcotic drugs for sale (Count II), each a class two felony. "[W]hen the charged possession for sale is incidental to the charged transportation for sale, it is a lesser-included offense, for a person cannot commit the transportation offense without necessarily committing the possession offense." *State v. Chabolla-Hinojosa*, 192 Ariz. 360, 363, ¶ 12 (App. 1998). In such a case, "the conviction on the lesser offense should [] be vacated." *Id.* at 365, ¶ 21; *accord Cheramie*, 218 Ariz. at 448-49, ¶¶ 9-12. Because Count II is a lesser-included offense of Count I, we vacate Prado's conviction and sentence on Count II, possession of narcotic drugs for sale.

## CONCLUSION

¶29 We affirm Prado's convictions and sentences on Counts I, III, and IV, but we vacate Prado's conviction and sentence on Count II, possession of narcotic drugs for sale.



AMY M. WOOD • Clerk of the Court
FILED: AA